# IN THE UNITED STATES COURT OF APPEALS
# FOR THE TENTH CIRCUIT

| | | |
|---|---|---|
| STATE OF KANSAS, *et al.,* | : | |
| | : | |
| Plaintiffs-Appellants, | : | On Appeal from the |
| | : | United States District Court for |
| v. | : | the District of Kansas |
| | : | |
| MERRICK B. GARLAND, *et al.,* | : | District Court Case No. |
| | : | 6:24-cv-01086 |
| Defendants-Appellees. | : | |
| | : | |

---

## BRIEF OF *AMICI CURIAE* STATES OF OHIO, LOUISIANA, AND TEXAS IN SUPPORT OF PLAINTIFFS-APPELLANTS

---

DAVE YOST
Ohio Attorney General

T. ELLIOT GAISER*
Ohio Solicitor General
 *Counsel of Record*
30 East Broad Street, 17th Floor
Columbus, Ohio 43215
614.466.8980
thomas.gaiser@ohioago.gov

*Counsel for State of Ohio*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................ii

INTRODUCTION AND INTERESTS OF *AMICI*.................................................1

STATEMENT ...................................................................................................3

ARGUMENT...................................................................................................6

    I.     Congress explicitly denied the ATF the power it asserts to mandate universal licensing and background checks................................................7

    II.    The ATF rule triggers the major questions doctrine, which confirms Congress did not clearly authorize its universal licensing and background check regime........................................................................8

    III.   Congress has not clearly authorized the ATF to impose universal licensing and background checks...........................................................10

CONCLUSION............................................................................................. 13

CERTIFICATE OF COMPLIANCE................................................................. 15

CERTIFICATE OF SERVICE.......................................................................... 16

# TABLE OF AUTHORITIES

<b>Page(s)</b>

**Cases**

*Biden v. Nebraska*,
600 U.S. 477 (2023)..............................................................................7

*Bowen v. Georgetown Univ. Hosp.*,
488 U.S. 204 (1988)............................................................................. 6

*Clinton v. City of N.Y.*,
524 U.S. 417 (1998) ..............................................................................1

*D.C. v. Heller*,
554 U.S. 570 (2008)..............................................................................1

*Elrod v. Burns*,
427 U.S. 347 (1976)..............................................................................1

*Garland v. Cargill*,
602 U. S. 406 (2024) ............................................................................ 9

*In re MCP No. 185*,
No. 24-7000, 2024 WL 3650468 (6th Cir. Aug. 1, 2024) ...................12

*McDonald v. Chicago*,
561 U.S. 742 (2012) ..............................................................................1

*N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*,
597 U.S. 1 (2022)..................................................................................1

*NFIB v. OSHA*,
595 U.S. 109 (2022)..............................................................................7

*West Virginia v. EPA*,
597 U.S. 697 (2022)................................................................... 8, 9, 10

**Statutes**

5 U.S.C. §705..........................................................................................3

5 U.S.C. §706 ...................................................................3

7 U.S.C. §1339d .............................................................. 11

18 U.S.C. §3571 .............................................................10

18 U.S.C. §921 .........................................................passim

18 U.S.C. §922 ........................................................... 3, 10

18 U.S.C. §923 ..................................................................3

18 U.S.C. §924 ...............................................................10

40 U.S.C. §1315 ............................................................. 11

54 U.S.C. §100903 ........................................................ 11

89 Fed. Reg. 28968 ................................................ 2, 4, 10

Pub. L. No. 103–159 ....................................................... 8

Public Law 117-159, §12002, 136 Stat. 1313 (2022) .................................................10

**Other Authorities**

F*ederal Firearms Licenses*, Bureau of Alcohol, Tobacco, Firearms, and
   Explosives ..............................................................3

H.R.2122, 106th Cong. (1999)....................................... 8

H.R.8, 117th Cong. (2021)............................................ 9

S.22, 113th Cong. (2013) ............................................. 9

**INTRODUCTION AND INTERESTS OF *AMICI***

The American system of government protects individual liberty through three primary bulwarks: the separation of powers, federalism, and the Bill of Rights. *Clinton v. City of N.Y.*, 524 U.S. 417, 450 (1998) (Kennedy, J., concurring). The federal government's action here, an executive-branch agency's decree expanding background checks for firearms far beyond the limits Congress expressly set, menaces all three protections. Amici the States of Ohio, Louisiana, and Texas write to vindicate their interests in each.

Amici are interested in opposing federal agency action that exceeds the statutory authority delegated to it by Congress, undermining the separation of powers. That is especially true when, as here, the action also imposes police-power regulations on citizens that the states have decided against, eroding a key protection of federalism. Amici also have a sovereign interest in upholding their citizens' fundamental right to armed self-defense. *See D.C. v. Heller*, 554 U.S. 570, 599, 628 (2008); *McDonald v. City of Chicago*, 561 U.S. 742, 767 (2012). The Final Rule impairs citizens' Second Amendment rights, thus inflicting irreparable harm, *see Elrod v. Burns*, 427 U.S. 347, 373 (1976), by prohibiting the purchase of firearms for self-defense except through a licensed dealer and after submitting to a background check—a scheme that does not remotely resemble any historical regulation. *See N.Y. State Rifle & Pistol Ass'n, Inc. v.*

*Bruen*, 597 U.S. 1, 24, 30–31 (2022).  Amici seek to vindicate these interests by urging that this Court reverse the district court's denial of a preliminary injunction.

Appellants' brief demonstrates that the Final Rule published at 89 Fed. Reg. 28968 not only exceeds the power Congress delegated to the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"),  but actually *violates* the statutory provision it purports to draw authorization from.  It bans all sales of firearms useful for self-defense, except for sales made through ATF-licensed dealers who must run a background check on the purchaser.  But Congress has expressly protected sales by private individuals selling guns they personally own from these requirements.  In that way, Congress directly precluded the Final Rule's attempt to turn virtually *every* handgun sale (and most long gun sales) into a licensed "dealer" sale subject to a background check.

Amici write to emphasize that Appellants have shown an uncommonly strong likelihood of success on the merits.  Namely, Appellants are likely to succeed on their Administrative Procedure Act ("APA") claims because the Final Rule both contradicts the statute and asserts authority to answer a major policy question.  Such agency boldness requires the Final Rule to point to a clear statement from Congress that authorizes a regulatory end to debate on an issue of extraordinary political significance.  Since the Final Rule would end the decades-long national background-check debate

without clear congressional authorization to do so, it is "in excess of statutory … authority," 5 U.S.C. §706(2)(C), and this Court should grant an injunction to "postpone the effective date of [the] agency action … pending conclusion of the review proceedings," §705.

## STATEMENT

Congress has long required background checks only for firearm purchases through a "dealer." 18 U.S.C. §§921(a)(11), 922(t)(1)(A). A "dealer" is "any person engaged in the business of selling firearms," §921(a)(11), and must obtain a federal firearms license ("FFL"), §922(a)(1)(A), which costs $200, takes months of wait time, and requires the dealer to record every transaction for an annual ATF inspection. *Federal Firearms Licenses*, Bureau of Alcohol, Tobacco, Firearms, and Explosives, https://perma.cc/9JQM-8K3F; 18 U.S.C. §923(g)(1)(A), (g)(1)(B)(ii)(I).

But Congress has never required background checks for used gun sales among private individuals. Indeed, Congress has made clear that private individuals like gun collectors do not need a license to sell firearms: an individual who decides to sell a gun he or she owns is not "engaged in the business of" gun-dealing. §921(a)(11). Congress carefully specified that "a person who makes occasional sales … of firearms for the enhancement of a personal collection or for a hobby, or who sells all or part of his personal collection of firearms" is not a dealer and need not obtain a federal

license or conduct pre-sale background checks. §921(a)(21)(C). Only someone who sells "firearms as a regular course of trade or business to predominantly earn a profit through the repetitive purchase and resale of firearms" is "engaged in the business" of selling firearms, and thus a "dealer" subject to licensing and pre-sale background-checking requirements. *Id.*

In the guise of furthering the purpose of this statute, the Final Rule effectively eliminates the "dealer" limitation on licensing and background check requirements by making everyone who sells a gun a "dealer." Here is how.

The ATF begins by decreeing that "[e]ven a single firearm transaction, or offer to engage in a transaction, when combined with other evidence, may be sufficient to require a license" and therefore, a pre-sale background check on the purchaser. 89 Fed. Reg. 28968, 28976. The Final Rule does not specify what sort of "other evidence" might transform "a single firearm transaction" into "a regular course of trade or business … through the repetitive purchase and resale of firearms." In the case of a single firearm transaction there are, by definition, no other firearms transactions to point to. Thus anyone who sells a gun might be committing a felony if done without the ATF's prior permission.

Having thus removed "course of business" from Congress's definition of "dealer[s]," the Final Rule next interprets the "to predominantly earn a profit"

requirement to create a presumption of profit motive if the seller "advertises or posts firearms for sale, including on any website" or "purchases, rents, or otherwise secures … space at a gun show." *Id*. at 28981. A private individual who buys a ticket to a gun show and enters bringing one gun for sale has presumably "secure[d] … space at a gun show." Thus a person, offering a single firearms transaction, may be a gun "dealer."

The Final Rule addresses the statutory protection for sales involving a "personal collection," but quickly dispatches it by concluding that "firearms accumulated primarily for *personal protection* are not included." *Id*. at 28969, 29039 (emphasis added). And the ATF conveniently gives itself discretion to decide "[w]hether a firearm is part of a personal collection" based on "the kind and type of firearms." *Id*. at 29039. If the cases that the Final Rule cites for support are any indication, *see id*. at 29039 n.220 (listing cases applying sentencing enhancements for criminal possession of firearms), that means no one can buy or sell any modern handgun or any shotgun or rifle that might be used for individual self-defense except through an FFL-holder and after a background check. (The Final Rule purports to allow private buying and selling of "personal firearms … for 'historical re-enactment,'" *id*. at 28996, which presumably includes a limited sphere of firearms, like muzzleloaders and cap-and-ball revolvers).

In short, the ATF has asserted power to mandate universal background checks for everyone hoping to newly exercise their Second Amendment right to own a firearm for self-defense, and imposed criminal sanctions on private sales without such background checks.

## ARGUMENT

"It is axiomatic that an administrative agency's power to promulgate legislative regulations is limited to the authority delegated by Congress." *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988). The ATF has no statutory authority to route all firearms sales through a government-licensed dealer after a background check. The Final Rule attempts to settle a political controversy that has roiled the nation for decades, and does so by assiduously flouting the relevant statutes. Time and again bills to create a universal background check system have failed in Congress. Now, the ATF's Final Rule foists that outcome across the nation through executive action.

That history of profound and earnest disagreement on a topic directly implicating a fundamental right secured in the Bill of rights makes universal background checks a quintessential "major question" that an agency may not settle absent clear statutory text conferring that authority. Here, the ATF claims authorization to mandate universal background checks from a statute that clearly rejects that policy choice. That will not do. This Court should reverse the district court's judgment and remand with

instructions to preliminarily enjoin implementation of the Final Rule. And indeed,

the Court should conclude that the Final Rule must be "set aside." 5 U.S.C. §706(2).

**I.      Congress explicitly denied the ATF the power it asserts to mandate universal licensing and background checks.**

The Final Rule would subject to ATF-licensing and pre-sale buyer background

check requirements any individual who wishes to sell personally owned self-defense

firearms. *Above* at 3–4. That is the consequence of the ATF's capacious definition

of the term "dealer." But the ATF flouts the exception to the definition of "dealer"

that Congress wrote right into the statute.

By law, one "who makes occasional sales, exchanges, or purchases of firearms for

the enhancement of a personal collection or for a hobby, or who sells all or part of his

personal collection of firearms" is *not* a "dealer" and need not get a license or con-

duct a background check on buyers. 18 U.S.C. §921(a)(21)(C). That language ex-

pressly precludes the Final Rule's requirements of seller-licensing and buyer back-

ground checks for all sales of firearms suitable for self-defense. If Congress's enact-

ments are inconvenient to this Administration's policy preferences, the latter are sub-

ordinate. *NFIB v. OSHA*, 595 U.S. 109, 113 (2022) (per curiam); *Biden v. Nebraska*,

600 U.S. 477, 500 (2023). The court need look no further than the definition of

"dealer" to find that Appellants are likely to succeed on their APA claims.

II. **The ATF rule triggers the major questions doctrine, which confirms Congress did not clearly authorize its universal licensing and background check regime.**

But even if the plain text were not sufficient to show the Final Rule is likely unlawful, the ATF would need to show more than that the text merely *allows* its interpretation. *Nebraska*, 600 U.S. at 506. That is because the major questions doctrine demands "clear congressional authorization" when an agency asserts authority of extraordinary "history and … breadth" to resolve a matter of great "political significance" and end "an earnest and profound debate across the country." *West Virginia v. EPA*, 597 U.S. 697, 721, 724, 732 (2022) (quotations omitted and alterations accepted). The major-questions doctrine forecloses the Final Rule for two reasons.

First, the Final Rule purports to settle a major question by "adopt[ing] a regulatory program that Congress had conspicuously and repeatedly declined to enact itself." *Id.* at 724. This, the history of background checks for firearms sales in the United States shows, has been a topic of "earnest and profound debate" over the course of decades. *Id.* at 732 (quotation omitted). Bills to expand the limited background check system in the 1993 "Brady Handgun Violence Prevention Act", Pub. L. No. 103-159, enacted June 25, 2022, have yet to pass. For example, the "Mandatory Gun Show Background Check Act" of 1999 faltered in the House of Representatives. H.R.2122, 106th Cong. (1999). The "Gun Show Background Check Act of

2013" was introduced in the Senate and died in committee. S.22, 113th Cong. (2013). In the last Congress, a universal background check bill passed the House but stalled in the Senate. H.R.8, 117th Cong. (2021). The gears of legislation are turning, but the Final Rule impermissibly bypasses Congress. *See Garland v. Cargill*, 602 U. S. 406, 429 (2024) (Alito, J., concurring).

That Congress has "conspicuously and repeatedly declined to enact" background check expansion shows that it is an issue of great "political significance" that gives courts "every reason to hesitate before concluding that Congress meant to confer on [ATF] the authority it claims" to mandate universal background checks for self-defense firearm purchases. *West Virginia*, 597 U.S. at 721, 724–25 (quotation omitted).

Second, the ATF claims a startling cache of power. Recall that the Final Rule requires everyone who wishes to sell a firearm suitable for self-defense to obtain a federal firearms license from the ATF. *Above* at 3–4. The Final Rule also requires everyone who buys a self-defense firearm to submit to a background check. *Id*. Obtaining a license involves a $200 application fee and several months of waiting for the ATF to process the application, plus an obligation to maintain records of all firearms sales, which the ATF can inspect yearly. *Above* at 3. And because the ATF reserves for itself broad case-by-case discretion to determine whether a sale requires a license, *any* firearm sale not reported to the ATF risks severe criminal penalties: 5 years in

prison      and      a      $250,000      fine      to      the      seller.      18 U.S.C.

§§922(a)(1)(A), 924(a)(1)(D), 3571(b)(3).  Congress does not lightly turn executive-

branch agencies loose to criminalize what was yesterday a fundamental right.

III.   **Congress has not clearly authorized the ATF to impose universal licensing and background checks.**

The ATF has no "clear congressional authorization for the power it claims." *West*

*Virginia*, 597 U.S. at 723 (quotation omitted).

The ATF claims Congress authorized universal background checks by amending

"the definition of 'engaged in the business' in … 18 U.S.C. [§]921(a)(21)(C)" via the

Bipartisan Safer Communities Act, Publ. L. No. 117-159, §12002, 136 Stat. 1313, 1324

(2022).  89 Fed. Reg. at 28968.  As amended, the statute defines "engaged in the

business" of dealing in firearms as selling "firearms as a regular course of trade or

business to predominantly earn a profit through the repetitive purchase and resale of

firearms."  18 U.S.C. §921(a)(21)(C).

This is not a delegation of authority for the ATF to require a federal license for

any individual selling a self-defense firearm.  The prior definition of "engaged in the

business" of dealing firearms defined the practice as selling "firearms as a regular

course of trade or business with the principal objective of livelihood and profit

through the repetitive purchase and resale of firearms."  §921(a)(21)(C) (2021).

Congress nixed "the principal objective of livelihood" from the definition of who is

a gun dealer. The ATF conceives that deletion as authority to mandate that everyone—even single-sale self-defense firearm sellers—become an FFL dealer and run a background check, or risk a felony prosecution. That parsing of the current statute is implausible.

The Final Rule's sweeping new regime finds no footing in this amended definition, especially contrasted against the clear statements Congress *has made* elsewhere. *See, e.g.*, 54 U.S.C. §100903(b) ("The Secretary [of the Interior] shall prescribe regulations … to mitigate the adverse effects of solid waste disposal sites" on federal property); 40 U.S.C. §1315(c)(1) (similar); 7 U.S.C. §1339d(e) (similar). Tellingly, in the amended definition, Congress *maintained* the "engaged in the business" language. Had Congress redefined "dealer" to read "any person who, under any circumstances, sells a modern handgun or a shotgun or rifle that the Director, in his sole discretion, would like to regulate," *but see* 18 U.S.C. §921(a)(11) (defining "dealer"), the major-questions argument would be weaker. But this is not what Congress did.

All Congress did was trade six words for four new ones to clarify that part-time gun dealers are gun dealers. Far from greenlighting universal background checks for all purchases of firearms for self-defense, the Bipartisan Safer Communities Act amendment is a modest measure to make sure that gun dealers with day jobs remain subject to licensing requirements. Before the amendment, people who generated

significant income by regularly selling large numbers of firearms were arguably exempt from federal licensing if they earned their principal livelihood in another trade. By dropping the "livelihood" terminology, the amendment closed a potential loophole for hobbyist gun traders. One-off private sales do not meet the as-amended definition's requirement that dealers engage in "repetitive purchase and resale." 18 U.S.C. §921(a)(11).

"The more an agency asks of a statute, in short, the more it must show in the statute to support its rule." *In re MCP No. 185*, No. 24-7000, 2024 WL 3650468, at *3 (6th Cir. Aug. 1, 2024) (per curiam). The ATF's position—that Congress's choice to remove the "livelihood" element from the definition of dealer justifies a regulation that far exceeds the strongest versions of failed background-check legislation—demands far more than the scanty text can offer.

*　　*　　*

Congress has not empowered the ATF to pre-approve all new attempts to obtain and "keep" a firearm. *See* U.S. Const. amend. II. An administrative agency would need a clear statutory authorization to attempt such an extraordinary project (which would invite constitutional pitfalls). Because Congress never clearly stated that it was delegating power to the ATF to impose massively controversial universal background checks on handgun and many long gun sales (indeed, Congress clearly stated

the opposite), Appellants are likely to succeed on their claim that the Final Rule is unlawful.

## CONCLUSION

This Court should reverse the district court's denial of a preliminary injunction because Appellants have made a strong showing that the Final Rule exceeds the ATF's statutory authority.

Respectfully submitted,

DAVE YOST
Ohio Attorney General

*/s/T. Elliot Gaiser*
T. ELLIOT GAISER*
Ohio Solicitor General
 **Counsel of Record*
30 East Broad Street, 17th Floor
Columbus, Ohio 43215
614-466-8980
thomas.gaiser@ohioago.gov

*Counsel for State of Ohio*

## ADDITIONAL COUNSEL

Elizabeth B. Murrill
Louisiana Attorney General

Ken Paxton
Texas Attorney General

## CERTIFICATE OF COMPLIANCE

I hereby certify, in accordance with Rule 32(g) of the Federal Rules of Appellate Procedure, that this brief complies with the type-volume for an *amicus* brief supporting an appellant and contains 2,790 words. *See* Fed. R. App. P. 32(a)(7)(B)(i), 29(a)(5).

I further certify that this brief complies with the typeface requirements of Federal Rule 32(a)(5) and the type-style requirements of Federal Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Equity font.

*/s/ T. Elliot Gaiser*
T. ELLIOT GAISER
Ohio Solicitor General

# CERTIFICATE OF SERVICE

I hereby certify that on September 25, 2024, the foregoing was filed electroni-

cally.  Notice of this filing will be sent to all parties for whom counsel has entered an

appearance by operation of the Court's electronic filing system.  Parties may access

this filing through the Court's system.

*/s/ T. Elliot Gaiser*
T. ELLIOT GAISER
Ohio Solicitor General
