No. 24-3101

# UNITED STATES COURT OF APPEALS
# FOR THE TENTH CIRCUIT

STATE OF KANSAS, IOWA, MONTANA, ALABAMA, ALASKA, GEORGIA, IDAHO, INDIANA, KENTUCKY, MISSOURI, NEBRASKA, NEW HAMPSHIRE, NORTH DAKOTA, OKLAHOMA, SOUTH CAROLINA, SOUTH DAKOTA, TENNESSEE, VIRGINIA, WEST VIRGINIA, WYOMING, AND PHILLIP JOURNEY, ALLEN BLACK, DONALD MAXEY, AND CHISHOLM TRAIL GUN ASSOCIATION,

*Plaintiffs-Appellants,*

*v.*

MERRICK GARLAND, in his official capacity as Attorney General of the United States, STEVEN DETTELBACH, in his official capacity as the Director of the Bureau of Alcohol, Tobacco, Firearms and Explosives of the United States Department of Justice, and the BUREAU OF ALCOHOL, TOBACCO, FIREARMS & EXPLOSIVES,

*Defendants-Appellees.*

On Appeal from the United States District Court
for the District of Kansas, No. 6:24-cv-01086-TC-TJJ

**BRIEF OF *AMICI CURIAE* EVERYTOWN FOR GUN SAFETY SUPPORT FUND AND GIFFORDS LAW CENTER TO PREVENT GUN VIOLENCE IN SUPPORT OF DEFENDANTS-APPELLEES AND AFFIRMANCE**

KELLY P. DUNBAR
SONIKA DATA
WILMER CUTLER PICKERING
  HALE AND DORR LLP
2100 PENNSYLVANIA AVENUE NW
WASHINGTON, DC 20037
(202) 663-6000



November 27, 2024

PREET BHARARA
  *Counsel of Record*
JAY HOLTMEIER
ALEX W. MILLER
KIMBERLY WATERS
WILMER CUTLER PICKERING
  HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...................................................................... ii

INTEREST OF *AMICI CURIAE* ...............................................................1

INTRODUCTION ......................................................................................3

ARGUMENT ..............................................................................................5

I.    ATF ACTED WITHIN ITS STATUTORY AUTHORITY IN
PROMULGATING THE FINAL RULE .....................................................5

II.   THE FINAL RULE'S TREATMENT OF THE "PERSONAL
COLLECTION" EXCEPTION IS CONSISTENT WITH THE
STATUTORY SCHEME ......................................................................11

III.  THE FINAL RULE'S TREATMENT OF SALES VOLUME AND PROOF
OF PROFIT DRAWS ON DECADES OF CASELAW ..............................20

     A.     In Certain Circumstances, Even a Single Transaction
May Constitute Being Engaged in the Business .................20

     B.     The "Engaged in the Business" Standard Turns on Intent
to Profit, Not Actual Profit.................................................24

CONCLUSION .........................................................................................26

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## CASES

Page(s)

*AT&T Corp. v. Iowa Utilities Board*, 525 U.S. 366 (1999).......................6

*Bostock v. Clayton County*, 590 U.S. 644 (2020) ....................................15

*Chevron, U.S.A., Inc. v. Natural Resource Defense Council, Inc.*,
    467 U.S. 837 (1984)..............................................................................9

*District of Columbia v. Heller*, 554 U.S. 570 (2008) ..............................2

*Gustafson v. Alloyd Co.*, 513 U.S. 561 (1995)..........................................14

*In re Woods*, 743 F.3d 689 (10th Cir. 2014)...........................................19

*Joffe v. Google, Inc.*, 746 F.3d 920 (9th Cir. 2013)................................10

*Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024) ..................4, 5, 7, 9

*McDonald v. City of Chicago*, 561 U.S. 742 (2010) ................................2

*Morehouse Enterprises, LLC v. ATF*, 78 F.4th 1011 (8th Cir. 2023).......................6

*New York State Rifle & Pistol Association v. Bruen*, 597 U.S. 1 (2022)...................2

*NRA v. Brady*, 914 F.2d 475 (4th Cir. 1990) ...........................................7, 9, 10, 11

*United States v. Bayles*, 310 F.3d 1302 (10th Cir. 2002) .......................17

*United States v. Brown*, 185 F. App'x 635 (9th Cir. 2006) ....................25

*United States v. Cousin,* No. 11-CR-0143, 2012 WL 1664195 (W.D.
    Pa. May 11, 2012).................................................................................17

*United States v. Halpin*, 139 F.3d 310 (2d Cir. 1996)............................17

*United States v. Hanson*, 534 F.3d 1315 (10th Cir. 2008) .....................17

*United States v. Hause*, 26 F. App'x 153 (4th Cir. 2001).......................17

*United States v. King*, 735 F.3d 1098 (9th Cir. 2013) ............................23, 25

*United States v. Leonard*, 97 F. App'x 599 (6th Cir. 2004) .................................... 18

*United States v. Mastro*, 570 F. Supp. 1388 (E.D. Pa. 1983) ................................ 25

*United States v. Murphy,* 852 F.2d 1 (1st Cir. 1988) ........................................ 23, 24

*United States v. Nadirashvili*, 655 F.3d 114 (2d Cir. 2011) ............................ 22, 23

*United States v. Shipley*, 546 F. App'x 450 (5th Cir. 2013) .................................... 25

*United States v. Swinton*, 521 F.2d 1255 (10th Cir. 1975) ............................... 21, 22

*United States v. Tarr*, 589 F.2d 55 (1st Cir. 1978) ............................................... 24

*United States v. Tyson*, 653 F.3d 192 (3d Cir. 2011) ............................................. 21

*United States v. Valdes*, 681 F. App'x 874 (11th Cir. 2017) .................................. 25

*United States v. Zheng Jian Shan*, 80 F. App'x 31 (9th Cir. 2003) ........................ 23

*Waetzig v. Halliburton Energy Services, Inc.*, 82 F.4th 918 (10th Cir. 2023) ................................................................................................................ 14, 15

## DOCKETED CASES

*City of Syracuse v. ATF*, No. 20-cv-06885 (S.D.N.Y.) ............................................. 2

*Everytown for Gun Safety Support Fund v. ATF*, No. 21-cv-00376 (S.D.N.Y.) ........................................................................................................... 2

*Morehouse Enterprises, LLC v. ATF*, Nos. 22-2812, 22-2854 (8th Cir.) ..................................................................................................................... 1

*State of Kansas v. Garland*, No. 24-cv-01086 (D. Kan.) ........................................ 2

*United States v. Naa*, No. 22-CR-00043 (D. Utah) ............................................... 18

*United States v. Nelson*, No. 20-CR-00339 (D. Utah) ........................................... 18

*United States v. Preap*, No. 18-CR-00155 (D.R.I.) ............................................... 18

*United States v. Samuels*, No. 18-MJ-00143 (W.D. Mo.) ...................................... 18

*VanDerStok v. Garland*, No. 23-10718 (5th Cir.) .................................................... 1

# STATUTES AND RULES

18 U.S.C.
    § 921 .................................................................13, 24, 25, 26
    § 926 ...................................................................................4, 6, 10

28 U.S.C. § 599A ............................................................................4, 6

Gun Control Act of 1968, Pub. L. No. 90-618, 82 Stat. 1213 ..................................10

Firearms Owners' Protection Act Amendments, Pub. L. No. 99-360,
    100 Stat. 766 (1986) ...................................................................26

Federal Rule of Appellate Procedure 29 ...................................................1

# REGULATIONS AND ADMINISTRATIVE MATERIALS

27 C.F.R. § 478.11 ..................................................................12, 13, 14

28 C.F.R. § 0.130 ..........................................................................6

*Commerce in Firearms and Ammunition*, 33 Fed. 18,555
    (Dec. 14, 1968) ........................................................................8

*Treasury Department Order No. 221*, 37 Fed. Reg. 11,696
    (June 10, 1972) ........................................................................6

*Commerce in Firearms and Ammunition*, 53 Fed. Reg. 10,480
    (Mar. 31, 1988) ........................................................................9

*Commerce in Firearms & Ammunition—Reporting Theft or Loss of
Firearms in Transit*, 81 Fed. Reg. 1307 (Jan. 12, 2016) ................................8

*Definition of "Engaged in the Business" as a Dealer in Firearms*,
    89 Fed. Reg. 28,968 (Apr. 19, 2024)..........................................3, 4, 6, 19, 21

# LEGISLATIVE MATERIALS

127 Cong. Rec. 8203 (1981) ................................................................16

131 Cong. Rec. 18,155 (1985) ..............................................................16

*Hearings Before the Subcommittee on Criminal Justice of the House Committee on the Judiciary, on H.R. 1647, H.R. 4492, H.R. 4711, H.R. 5679, and H.R. 5703*, 97th Cong. (1983) ...................................16

S. Rep. No. 98-583, 2d Sess. (1984)........................................................10

## OTHER AUTHORITIES

ATF, *Do I Need A License To Buy And Sell Firearms?* (Jan. 2016), https://www.govinfo.gov/content/pkg/GOVPUB-J38-PURL-gpo125446/pdf/GOVPUB-J38-PURL-gpo125446.pdf..................................9

ATF, *National Firearms Commerce & Trafficking Assessment (NFCTA): Firearms Trafficking Investigations – Vol. Three, Part V: Type and Volume of Firearms Trafficked* (Apr. 4, 2024), https://www.atf.gov/firearms/docs/report/nfcta-volume-iii-part-v/download ..........................................................................19

*Cambridge Dictionary*, https://dictionary.cambridge.org/us/dictionary/english/hobby (visited Nov. 27, 2024) ...................................15

*Definitions for the Categories of Persons Prohibited from Receiving Firearms*, T.D. ATF-391 (eff. Aug. 26, 1997), https://www.atf.gov/resource-center/docs/td-391-definitions-categories-persons-prohibited-receiving-firearms-published/download......................................................................................8

*Merriam-Webster Dictionary*, hhttps://www.merriam-webster.com/dictionary/collection (visited Nov. 27, 2024)................................................13

*Merriam-Webster Dictionary*, https://www.merriam-webster.com/dictionary/hobby (visited Nov. 27, 2024).......................................................15

*Oxford English Dictionary*, https://www.oed.com/dictionary/hobby_n1 (visited Nov. 27, 2024)................................................................15

2A *Sutherland Statutory Construction* § 47:16 (7th ed.)........................................14

*United States Sentencing Commission Manual* (Nov. 20224), https://www.ussc.gov/sites/default/files/pdf/guidelines-manual/2024/GLMFull.pdf..........................................................................17

*Webster's Ninth New Collegiate Dictionary* (1985)................................................13

*Webster's Third New International Dictionary* (1986) ...........................................13

Pursuant to Federal Rule of Appellate Procedure 29, Everytown for Gun Safety Support Fund and Giffords Law Center to Prevent Gun Violence respectfully submit this brief as *amici curiae* in support of Defendants-Appellees and affirmance. All parties have consented to this filing.[1]

## INTERESTS OF *AMICI CURIAE*

*Amicus curiae* Everytown for Gun Safety Support Fund ("Everytown") is the education, research, and litigation arm of Everytown for Gun Safety, the country's largest gun-violence prevention organization, with millions of supporters nationwide. Everytown seeks to improve public understanding of the causes of gun violence and to help reduce that violence by conducting groundbreaking original research, developing evidence-based policies, communicating this knowledge to the American public, and advancing gun safety and gun violence prevention in communities and the courts. Everytown has extensive experience litigating cases involving the interpretation of federal firearms laws and has submitted numerous *amicus* briefs in cases involving challenges to federal firearms laws and regulations. *See, e.g.*, *VanDerStok v. Garland*, No. 23-10718 (5th Cir. Aug. 16, 2023), Dkt. 104; *Morehouse Enterprises, LLC v. ATF*, Nos. 22-2812,

---

[1] No party's counsel authored this brief in whole or in part. Nor did any party or party's counsel, or any other person other than *amici curiae*, their members, or their counsel, contribute money that was intended to fund preparing or submitting this brief.

22-2854 (8th Cir. Dec. 5, 2022); *Everytown for Gun Safety Support Fund v. ATF*, No. 21-cv-00376 (S.D.N.Y. 2021) (challenge to ATF action); *City of Syracuse v. ATF*, No. 20-cv-06885 (S.D.N.Y. 2020) (challenge to ATF action). Everytown submitted an *amicus* brief in this litigation before the district court. *See State of Kansas v. Garland*, No. 24-cv-01086 (D. Kan. May 15, 2024), Dkt. 48.

Amicus curiae Giffords Law Center to Prevent Gun Violence is a survivor-led non-profit policy organization serving lawmakers, advocates, legal professionals, gun violence survivors, and others who seek to reduce gun violence and improve the safety of their communities. Giffords Law Center has contributed technical expertise and informed analysis as an *amicus* in numerous cases involving firearm regulations and constitutional principles affecting gun policy. *See, e.g.*, *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022); *McDonald v. City of Chi.*, 561 U.S. 742 (2010); *District of Columbia v. Heller*, 554 U.S. 570 (2008). Giffords Law Center also submitted an amicus brief in this litigation before the district court. *See State of Kansas v. Garland*, No. 24-cv-01086 (D. Kan. May 15, 2024), Dkt. 48.

# INTRODUCTION

Enacted in the wake of a series of tragic mass shootings, the Bipartisan Safer Communities Act (BSCA) represents Congress's most significant and comprehensive action to enhance gun safety in decades. The BSCA refined or redefined key statutory terms dating back to the Gun Control Act of 1968 (GCA), the Firearm Owners' Protection Act of 1986 (FOPA), and later amendments, including by expanding the definition of who is "engaged in the business" of dealing in firearms. Because a person "engaged in the business" must obtain a federal firearms license (FFL) to lawfully to sell guns, and FFL holders must conduct background checks on gun purchasers, the BSCA promotes public safety.

This appeal concerns the reasonable, commonsense steps taken by the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) to implement the BSCA's new legal framework. As ATF recognized, there are "numerous and various fact patterns" under which a person may be considered to be "engaged in the business." *Definition of "Engaged in the Business" as a Dealer in Firearms*, 89 Fed. Reg. 28,968, 28,991 (Apr. 19, 2024). ATF therefore issued a rule ("the Final Rule") that "provides persons who may be unclear how the statute applies to them with greater clarity as to what conduct implicates the statute." *Id.* The Rule does so in large measure by drawing on and codifying longstanding judicial precedent interpreting the GCA and related statutes.

Clarifying key terms affected by the BSCA is well within ATF's authority to issue regulations "necessary" to administering the nation's firearms laws. *See* 18 U.S.C. § 926(a); 28 U.S.C. § 599A. In particular, the Final Rule appropriately employed the "discretionary authority" conferred on ATF by Congress, *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024), to explain that a "personal collection" under federal firearms statutes does not include firearms "accumulated primarily for personal protection," 89 Fed. Reg. at 29,090. That definition follows directly from the statutory text and structure, and is consistent with the public's and Congress's understanding of the term when it was first enacted in the FOPA—all indicate that a "personal collection" refers to firearms obtained by hobbyists, antiques dealers, and collectors for reasons other than self-protection. Additional aspects of the Final Rule track existing judicial interpretations of statutory terms, such as by clarifying that a single firearm transaction may, in connection with other contextual factors, support the conclusion that a person is a firearms dealer, and that intending to profit from firearm sales (rather than proof of successfully doing so) may mean a person is engaged in the business.

Contrary to Appellants' framing, then, the Final Rule reflects a balanced effort to provide clarity regarding key statutory standards by drawing on established judicial interpretations. Appellants' objections to ATF's authority and to the Final Rule's supposed inconsistency with federal law are thus misplaced.

- 4 -

Nothing in the Rule exceeds what the law allows; as the Department of Justice put it, the Rule is instead "a distillation of precedent and practice applying the [BSCA]" and its predecessor statutes. DOJ Br. 44. Appellants' actual disagreement is with the BSCA, the FOPA, the GCA—with Congress, really—and the courts, not ATF's modest regulation. This Court should affirm.

## ARGUMENT

## I. ATF ACTED WITHIN ITS STATUTORY AUTHORITY IN PROMULGATING THE FINAL RULE

Congress can and does "confer discretionary authority on agencies" to issue administrative rules carrying the force of law. *Loper Bright*, 144 S. Ct. at 2268. As part of that delegated rulemaking authority, an agency may "give meaning to a particular statutory term" or "'fill up the details' of a statutory scheme." *Id.* at 2263. Here, the Final Rule "gives meaning" to statutory terms affected by the BSCA and "fills up the details" of the revised legal framework by providing the public and regulated parties with greater clarity about the conduct that can constitute engaging in the business of dealing firearms, addressing longstanding enforcement problems that Congress found to undermine public safety. That use of rulemaking is entirely consistent with Congress's grant of authority to ATF. Appellants' claims to the contrary lack any basis in statute or precedent, and ignore the vital role Congress gave ATF in implementing the expanded definition of "engaged in the business."

To start, Congress has conferred on ATF express authority to promulgate regulations "necessary" to carrying out the agency's duties in administering and enforcing federal firearms laws, including the GCA, the FOPA, and the BSCA. *See* 18 U.S.C. § 926(a); 28 U.S.C. § 599A; *see also AT&T Corp. v. Iowa Utils. Bd.*, 525 U.S. 366, 378 n.5 (1999) (where Congress enacts a later statute, not as a "freestanding enactment," but as an "amendment to, and hence *part of*, [a statute]" over which the agency has rulemaking authority, Congress should be understood to have delegated authority to make rules implementing the statutory amendments).[2] Pursuant to that delegated authority, ATF has long "promulgated rules and regulations defining terms necessary to enforce the [GCA]." *Morehouse Enters., LLC v. ATF*, 78 F.4th 1011, 1015 (8th Cir. 2023). Such regulations provide guidance to the public and to regulated parties, encourage consistency of enforcement of federal firearm laws, improve the capacity of federal, state, local, and tribal agencies to solve crimes, and promote the voluntary compliance mechanisms that are essential to the overall legal framework. *See, e.g.*, 89 Fed. Reg. at 28,988-28,989 (collecting comments so stating).

---

[2] The GCA grants this rulemaking authority to the Attorney General, who has in turn delegated it to ATF. *See* 28 U.S.C. § 599A(b)(1), (c)(1); 28 C.F.R. § 0.130(a)(1)-(2); *Treasury Department Order No. 221*, ¶¶ (1), (2)(d), 37 Fed. Reg. 11,696, 11,696-11,697 (June 10, 1972).

As the Supreme Court recently indicated, an agency's statutory authority to issue "necessary" regulations is flexible and includes the discretion to determine what rules are required to carry out its duties. Subject to constitutional constraints, Congress may "confer discretionary authority on agencies"—indeed, "it often has." *Loper Bright*, 144 S. Ct. at 2268. Congress, for example, can "'expressly delegate[]' to an agency the authority to give meaning to a particular statutory term," "empower an agency to prescribe rules to 'fill up the details' of a statutory scheme," or "regulate subject to the limits imposed by a term or phrase that 'leaves agencies with flexibility,'" like "appropriate," "reasonable," or "*necessary*." *Id.* at 2263 & n.6 (pointing to a statute that uses "necessary" as an example of a law that "leaves agencies with flexibility") (emphasis added).

Courts have long understood ATF's grant of authority in similar terms. The Fourth Circuit, for example, has held that Congress's use of the term "necessary" "almost inevitably confers some measure of discretion to determine what regulations are in fact 'necessary.'" *NRA v. Brady*, 914 F.2d 475, 479 (4th Cir. 1990). Importantly—and contrary to Appellants' urging, Appellants' Opening Br. 43—the use of "[n]ecessary" does not automatically mean "strictly necessary and the least restrictive means of accomplishing the purposes of the [GCA]." *Brady*, 914 F.2d at 479. Instead, "necessary" connotes a level of "flexibility," *Loper Bright*, 144 S. Ct. at 2263, not artificial constraint. Against that backdrop, the

district court properly observed that ATF's "statutory authority is typically thought to be quite 'broad'" and "is probably broad enough to authorize something along the lines of what the Final Rule has done." Appx. Vol. 3, at 11 (Order). At this preliminary stage, that reasoning is sufficient to reject Appellants' assertion that they are likely to succeed on the merits of their claims.

The Final Rule also follows decades of similar, necessary efforts by ATF to exercise its delegated rulemaking authority to provide additional clarity regarding existing statutory terms. *See Commerce in Firearms and Ammunition*, 33 Fed. Reg. 18,555, 18,557-18,558 (Dec. 14, 1968) (providing guidance on statutory terms similar to "engaged in the business," such as "Firearm frame or receiver," "Licensed dealer," "Licensed importer," and "Business premises"). For example, ATF has promulgated regulations on "the reporting of a firearm that has been stolen or lost in transit" because the text of the GCA "does not clearly address" that situation, and "[c]larifying this responsibility [was] thus important to the effective administration of the GCA." *Commerce in Firearms & Ammunition—Reporting Theft or Loss of Firearms in Transit*, 81 Fed. Reg. 1307, 1308 (Jan. 12, 2016). ATF has also issued rules defining terms within the GCA after new legislation revealed ambiguities in the existing legal framework. *See, e.g.*, *Definitions for the Categories of Persons Prohibited from Receiving Firearms*, T.D. ATF-391 (eff. Aug. 26, 1997) (implementing both "new" definitions for statutory terms and

definitions that "clarified an existing regulation" following passage of the Brady

Handgun Violence Prevention Act).[3]

ATF's prior efforts to explain the then-governing "engaged in the business"

statutory standard confirms its authority to promulgate the Final Rule. ATF had

previously provided additional clarity on that phrase through guidance documents.

*See Do I Need A License To Buy And Sell Firearms?* (Jan. 2016), https://www.gov

info.gov/content/pkg/GOVPUB-J38-PURL-gpo125446/pdf/GOVPUB-J38-PURL-

gpo125446.pdf. ATF had also conducted rulemaking on the definition of "engaged

in the business." *See Commerce in Firearms and Ammunition*, 53 Fed. Reg.

10,480 (Mar. 31, 1988). The regulations in effect when the BSCA became law,

however, relied on pre-BSCA statutory language. *See id*. at 10,491. After the

BSCA changed the legal framework, ATF needed to update its guidance to conform

with the new governing statute and its amended definition of "engaged in the

business." Regulatory action could hardly be more "necessary" than in such

circumstances, and ATF certainly acted within its delegated discretion in

determining that a new rule was required. *See Brady*, 914 F.2d at 479.

---

[3] Although some of these rules were upheld under *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984), the statutory language conferring ATF with authority is precisely the kind of delegation *Loper Bright* recognized as permissible, 143 S. Ct. at 2263 n.6 (listing "necessary" as a term creating rulemaking discretion).

Appellants argue that the FOPA limited ATF's rulemaking authority such that the Final Rule is impermissible, but the text cannot bear the weight Appellants place on it. Appellants' Opening Br. 41-43. Prior to the FOPA, the GCA permitted ATF to enact regulations it deemed "reasonably necessary." Pub. L. No. 90-618, 82 Stat. 1213, 1226 (1968). After the FOPA, the ATF may issue "necessary" rules. 18 U.S.C. § 926(a). As the Fourth Circuit explained in *Brady*, however, "necessary" still confers discretion; the deletion of "reasonably" in the FOPA is not of "decisive import." 914 F.2d at 479. Instead, the change "was merely intended to remove redundant language," *id.*, as the Report of the Senate Judiciary Committee explained:

> Sections 106(2) and (3) [amending the FOPA] provide that the Secretary shall promulgate only such regulations as are necessary *(as opposed to the redundant "reasonably necessary")* to carry out the provisions of the Gun Control Act.

S. Rep. No. 98-583, 2d Sess., at 27 (1984) (emphasis added). This is consistent with other courts' explanations that Congress may include words or draft provisions that are redundant "to clarify what might be doubtful." *See, e.g.*, *Joffe v. Google, Inc.*, 746 F.3d 920, 926 (9th Cir. 2013). Said otherwise, "Congress sometimes drafts provisions that appear duplicative of others—simply in Macbeth's words, to make assurance double sure." *Id.* (quotations omitted). Changing "reasonably necessary" to "necessary" thus did not alter ATF's "primary role in the implementation of [the GCA]" and the accompanying discretion that

role requires. *Brady*, 914 F.2d at 479. Indeed, Appellants identify no authority to the contrary.

In short, *Loper Bright* reaffirmed that Congress can delegate to agencies discretion in implementing statutes, including the discretion to provide additional clarity on statutory terms through rules, rather than case-by-case enforcement actions. Numerous courts of appeals have recognized ATF's rulemaking authority, and ATF previously used that authority to provide guidance on what it means to be "engaged in the business." The Final Rule therefore falls comfortably within ATF's statutory authority.

## II.    THE FINAL RULE'S TREATMENT OF THE "PERSONAL COLLECTION" EXCEPTION IS CONSISTENT WITH THE STATUTORY SCHEME

Since the FOPA's enactment in 1986, the definition of who is "engaged in the business" of dealing in firearms has excluded "a person who makes occasional sales, exchanges, or purchases of firearms for the enhancement of a personal collection or for a hobby, or who sells all or part of his personal collection of firearms." The Final Rule clarifies that a "personal collection" does not include "firearms accumulated primarily for personal protection," and instead refers only to those firearms a person "accumulates for study, comparison, exhibition (e.g., collecting curios or relics, or collecting unique firearms to exhibit at gun club events), or for a hobby (e.g., noncommercial, recreational activities for personal enjoyment, such as hunting, skeet, target, or competition shooting, historical

re-enactment, or noncommercial firearms safety instruction)."  27 C.F.R. §

478.11.  Although Appellants claim this commonsense definition improperly

narrows what constitutes a personal collection, Appellants' Opening Br. 47-48, the

Final Rule's approach is consistent with the plain meaning of "collection," the

contemporary understanding of that term at the time the FOPA was adopted, and

judicial decisions addressing firearms collecting.

*First*, Appellants misapprehend the role the personal collection exception

plays in the statutory scheme.  As befits the name, the exception is applicable only

to a person whose firearms transactions rise to the level of being "engaged in the

business" of dealing firearms.  27 C.F.R. § 478.11.  The vast majority of gun

owners have nothing to do with the exception—because they are not engaged in

commercial-level gun dealing in the first place, they do not need to invoke the

exception to transfer weapons without a license.  Further, ATF has distinguished

"firearms accumulated primarily for personal protection" from those acquired with

personal protection as an ancillary motivation.  *Id.*  Together with the "engaged in

the business" standard itself, that means only persons who *predominantly* seek

profit by dealing in firearms *primarily* obtained for personal protection could even

possibly be affected by the reference to personal protection.  These limitations are

then buttressed by the Final Rule's emphasis "that nothing in this definition shall

be construed as precluding a person from lawfully acquiring firearms for self-

protection or other lawful personal use." *Id.* That again clarifies that the personal collection exception is inapposite unless gun owners are already making firearms transactions for profit. *Id.*

**Second**, and most fundamentally, the ordinary meaning of "personal collection" excludes weapons obtained primarily for personal protection. The common definition of a "collection" is "an accumulation of objects gathered *for study, comparison, or exhibition as a hobby*." *See, e.g.*, *Merriam-Webster Dictionary* (emphasis added), https://www.merriam-webster.com/dictionary/collection. Dictionaries in use at the time the FOPA was enacted are in accord, defining "collection" as "an accumulation of objects gathered for study, comparison, or exhibition." *Webster's Ninth New Collegiate Dictionary* 259 (1985); *see also Webster's Third New International Dictionary* 444 (1986) ("[A]n assembly of objects or specimens for the purposes of education, research, or interest"). Personal protection is, to state the obvious, neither "study, comparison, or exhibition as hobby," nor "education, research, or interest."

As Appellees note, this ordinary meaning is supported by additional provisions in the GCA. DOJ Br. 11. The GCA defines a "collector" as "any person who acquires, holds, or disposes of firearms as curios or relics, *as the Attorney General shall by regulation define*." 18 U.S.C. § 921(a)(13) (emphasis added). That express grant of discretion to define what firearms a "collector"

- 13 -

collects alone justifies the Final Rule's definition, but ATF's regulations have also long defined "curios or relics" as "[f]irearms which are of special interest to collectors by reason of some quality other than is associated with firearms intended ... as offensive *or defensive* weapons." 27 C.F.R. § 478.11 (emphasis added). Items accumulated primarily for personal protection again fall outside of that definition, and it would be illogical to define a "collector" and the "collection" he assembles inconsistently.[4]

The concept of a "personal collection" of firearms is also constrained by the statute's use of the word "hobby" in the same provision. Under the *noscitur a sociis* canon, "a word is known by its neighbors." *Waetzig v. Halliburton Energy Servs., Inc.*, 82 F.4th 918, 922 (10th Cir. 2023). Put another way, "we cannot 'ascribe to one word a meaning so broad that it is inconsistent with its accompanying words.'" *Id.* (quoting *Gustafson v. Alloyd Co.*, 513 U.S. 561, 575 (1995)); *see also* 2A *Sutherland Statutory Construction* § 47:16 (7th ed.) ("The commonsense canon of noscitur a sociis counsels that a word is given more precise content by the neighboring words with which it is associated."). The neighboring

---

[4] Appellants briefly assert that this rulemaking mandate must come at the expense of authority to provide clarity about other statutory terms. Appellants' Opening Br. 43-44. But Congress's decision to *require* rulemaking as to one statutory provision does not abrogate ATF's rulemaking authority as to other sections of the GCA. DOJ Br. 31-32.

word "hobby" thus "illuminate[s]" and "narrow[s]" the term "personal collection." *Waetzig*, 82 F.4th at 923. And a hobby is "a pursuit outside one's regular occupation engaged in especially for relaxation." *Merriam-Webster Dictionary*, https://www.merriam-webster.com/dictionary/hobby; *see also, e.g.*, *Cambridge Dictionary* ("an activity that someone does for pleasure when they are not working"), https://dictionary.cambridge.org/us/dictionary/english/hobby; *Oxford English Dictionary* ("A favourite occupation or topic, pursued merely for the amusement or interest that it affords[.]"), https://www.oed.com/dictionary/ hobby_n1. Buying and selling guns for self-protection is not something done for relaxation or pleasure, and construing "personal collection" so broadly as to encompass personal protection would render the term "inconsistent with its accompanying words." *Waetzig*, 82 F.4th at 922. The definition of "personal collection" in the Final Rule, by contrast, complements the use of the word hobby by focusing on pursuits done for personal enjoyment—like study, comparison, or exhibition. That further justifies ATF's approach.

The legislative history of the FOPA provides additional evidence of the "ordinary public meaning" of the personal collection exception "at the time of its enactment" and supports the Final Rule. *Bostock v. Clayton Cnty.*, 590 U.S. 644, 654 (2020). As a FOPA sponsor explained, personal collections and hobbies were two sides of the same coin; the exceptions ensured that "[c]ollectors and hobbyists

who occasionally swap or sell incidental to their hobby would not be" engaged in the business. 127 Cong. Rec. 8202, 8203 (1981) (Sen. Volkmer). The National Rifle Association expressed the same view, supporting an "engaged in the business" definition that "expressly exclud[es] firearms hobbyists who dispose of their personal collections" on the basis that "[t]his more nearly approaches what we commonly think of as a dealer—not a collector who exhibits his firearms and swaps or sells in pursuit of a hobby." *Hearings Before the Subcomm. on Criminal Justice of the H. Comm. on the Judiciary, on H.R. 1647, H.R. 4492, H.R. 4711, H.R. 5679, and H.R. 5703*, 97th Cong., at 495 (1983) (statement of Neal Knox, NRA Executive Director). One of the personal collection exception's chief proponents, moreover, said it was needed to protect those dealing in "antiques," or special guns that were "engraved" or "gold inlaid," distinguishing guns that were part of a "collection" from those intended for general use. 131 Cong. Rec. 18,155 (1985) (statement of Sen. James A. McClure). He further characterized collectors as "virtually a 'nation unto themselves', with their own shows, at which they compete in display of their finest firearms, their own organizations, their own specialties." *Id.* at 18,156.

**Third**, courts have long distinguished firearms primarily obtained for personal protection from those that are part of a personal collection when interpreting the term "collection" under the federal sentencing guidelines.

Individuals convicted of certain violations may reduce their sentences if they possessed firearms "solely for lawful sporting purposes *or collection*," *U.S. Sentencing Commission Guidelines Manual* § 2K2.1(b)(2) (Nov. 2024) (emphasis added), https://www.ussc.gov/sites/default/files/pdf/guidelines-manual/2024/GLMFull.pdf.  This Court has held that guns primarily used for personal protection were not possessed for "[collection] purposes." *United States v. Hanson*, 534 F.3d 1315, 1319 (10th Cir. 2008).  In *United States v. Bayles*, for example, this Court recognized that the possession of two modern handguns—a Colt Python .357 revolver and a Beretta 9 mm pistol—itself served as evidence that the defendant possessed firearms other than "for sporting or collection purposes," 310 F.3d 1302, 1309 (10th Cir. 2002).  Other courts likewise sharply distinguish firearms possessed for personal protection from firearms that are for collections.  *See, e.g.*, *United States v. Hause*, 26 F. App'x 153, 154 (4th Cir. 2001) (per curiam) (inexpensive handgun was not the sort of firearm that would be considered collectible); *United States v. Halpin*, 139 F.3d 310, 311 (2d Cir. 1996) (per curiam) (firearms kept for personal protection were not used "solely for lawful sporting purposes or collection"); *United States v. Cousin,* No. 11-CR-0143, 2012 WL 1664195, at *3 (W.D. Pa. May 11, 2012) ("The firearm at issue is a semiautomatic handgun, clearly not possessed as a collector's item . . . .").  On the other hand, courts have determined that weapons are true collector's items based

on the kinds of commonsense considerations discussed above.  *See, e.g., United States v. Leonard*, 97 F. App'x 599, 602 (6th Cir. 2004) (Defendant's firearm was a collector's item because it was a Henry Repeating Rifle, "patented in 1860 as the first lever action repeating rifle.").[5]

   ***Fourth***, and finally, any reading of the statute that interprets "personal collection" to include firearms accumulated primarily for personal protection would significantly impair the statute's effectiveness.  In a statutory scheme "whereby a default rule is subject to an exception, [courts] are guided by the interpretive principle that exceptions to a general proposition should be construed narrowly," and "must not be interpreted so broadly as to swallow the rule."

---

[5] ATF Special Agents have, for years, likewise concluded that modern self-protection handguns are not collectors' items, using indications of multiple purchases of those firearms to identify suspected traffickers. *See, e.g.*, Complaint ¶ 26, *United States v. Naa*, No. 22-CR-00043 (D. Utah Jan. 21, 2022), Dkt. 1 (noting that Glock pistols "are not typically considered to be of collector value" and that multiple purchases of duplicate models signaled trafficking); Complaint pp. 10-11, *United States v. Nelson*, No. 20-CR-00339 (D. Utah Aug. 28, 2020), Dkt. 1 (noting that Glock pistols are "not typically considered to be of collector value"); Affidavit for Criminal Complaint ¶ 69, *United States v. Samuels*, No. 18-MJ-00143 (W.D. Mo. Oct. 10, 2018), Dkt. 2-1 (noting that "Jimenez [Arms] pistols are not a firearm that is frequently collected" and that "since Jimenez pistols are commonly inexpensive, a profit can be made by buying them at a low cost and selling them at a marked up price to prohibited individuals"); Affidavit ¶ 29, *United States v. Preap*, No. 18-CR-00155 (D.R.I. Mar. 14, 2018), Dkt. 3-1 (noting that "Taurus pistols are relatively inexpensive pistols and as such are not common collector's items" and "that where multiple, identical, non-collectible firearms are purchased together there is a significant possibility that one or more of the firearms is being purchased for sale to another").

*In re Woods*, 743 F.3d 689, 699 (10th Cir. 2014) (collecting cases).  Here, the most

trafficked weapons are commonly purchased for personal protection, and allowing

those who deal in such weapons to invoke the personal collection exception would

swallow the rule and thus significantly diminish the BSCA's reach.  *See* ATF,

*National Firearms Commerce & Trafficking Assessment (NFCTA): Firearms*

*Trafficking Investigations – Vol. Three, Part V: Type and Volume of Firearms*

*Trafficked* 9 (Apr. 4, 2024) (in 2017 to 2021 period, 70,594 handguns involved in

trafficking investigations, against 23,511 rifles and 5,503 shotguns),

https://www.atf.gov/firearms/docs/report/nfcta-volume-iii-part-v/download.

Interpreting "personal collection" to potentially include any modern handgun for

which protection could be claimed as a reason for purchase would effectively

transform gun traffickers into collectors.

     ATF noted that absurdity—and applied common sense—in promulgating the

Final Rule:

> [I]ncluding firearms usable for self-defense in the definition of
> 'personal collection' would allow the limited definitional exclusions
> for enhancing and liquidating a personal collection to swallow the
> rule that dealers in firearms must be licensed, because one could
> nearly always claim that a firearm was purchased or sold to improve
> or liquidate the firearms one keeps for self-defense. That assertion is
> not consistent with the common definitions of "collection" or
> "hobby."

89 Fed. Reg. 29,039.  Appellants' contrary view of the exception would thus be no

"safe harbor" at all, Appellants' Opening Br. 47-48, and instead would undermine

Congress's intent in enacting the FOPA and the BSCA: exempting true collectors from licensing requirements while still expanding the definition of who is considered to be "engaged in the business."  Congress could have not intended that result.

## III. THE FINAL RULE'S TREATMENT OF SALES VOLUME AND PROOF OF PROFIT DRAWS ON DECADES OF CASELAW

Appellants also challenge how the Final Rule addresses the volume of firearms transactions that can constitute being engaged in the business, and the degree to which proof of profit is required.  Appellants' Opening Br. 48-51.  Both aspects of the Final Rule are grounded in established caselaw and follow directly from the BSCA.  As with their remaining arguments, Appellants' disputes thus lie with Congress—not ATF.

### A. In Certain Circumstances, Even a Single Transaction May Constitute Being Engaged in the Business

The Final Rule reasonably draws on longstanding caselaw finding that a person can be engaged in the business of dealing in firearms based on few, if any, consummated sales, so long as other circumstances evince that person's intent to profit from selling guns.  Contrary to Appellants' misleading construction, the Final Rule does *not* mean that a person becomes a "dealer" based on the sale of a single firearm in isolation.  Appellants' Opening Br. 49.  ATF has explained that "even under the previous statutory definition"—which was narrower than the

BSCA's expanded treatment of "engaged in the business"—"courts have upheld convictions for dealing without a license when few firearms, if any, were actually sold, *when other factors were also present*, such as the person representing to others a willingness and ability to repetitively purchase firearms for resale." 89 Fed. Reg. 28,976 (emphasis added).

Pursuant to the Final Rule, then, single transactions may result in being "engaged in the business" when other evidence demonstrates profit-motivated behavior. *See, e.g.*, *United States v. Tyson*, 653 F.3d 192, 200-201 (3d Cir. 2011) ("[T]he finder of fact must examine the intent of the actor and all circumstances surrounding the acts alleged to constitute engaging in business"). That construction makes perfect sense; a person who offers to sell dozens of guns in a single transaction, especially while representing his willingness to procure more, engages in commercial activity even if only a single transaction actually occurs.

This Court held as much nearly fifty years ago. In *United States v. Swinton*, 521 F.2d 1255 (10th Cir. 1975), a defendant appealed his conviction for engaging in the business of dealing in firearms without a license, *id.* at 1259. He argued, like Appellants, that the sale of a single firearm could not constitute engaging in the business. *Id.* at 1257. Interpreting § 922(a)(1) prior to the enactment of the current statutory definition of "engaged in the business," this Court rejected that position, holding that the sale of one "sawed-off shotgun" "standing alone, without

more, would not have been sufficient" to establish a violation, but when "considered *in conjunction with other facts and circumstances*" could suffice. *Id.* at 1257, 1259 (emphasis added). Those facts included the defendant informing undercover agents that he had previously purchased and sold stolen guns, that he was "dealing in guns," and that people "'normally'" "'tell [him] what type of gun they want and [he] go[es] out and get[s] it.'" *Id.* at 1257. Such evidence established that the defendant "considered himself to be and held himself out as a dealer, but that, most importantly, he was actively engaged in the business of dealing in guns," even when the charged conduct included only a single sale of a single weapon. *Id.* at 1258-1259.

Although *Swinton* was decided prior to the FOPA's addition of the "principal objective of livelihood and profit" standard, its core holding has continued to be applied in the decades since. The Second Circuit, for example, applied similar reasoning in *United States v. Nadirashvili*, 655 F.3d 114 (2d Cir. 2011). *Nadirashvili* affirmed the convictions of two defendants for aiding and abetting illegal dealing even though they only attempted to procure firearms for a single transaction. *Id.* at 120. The two defendants had knowledge that the illegal dealer was "engaged in the business" because that dealer "held himself 'out as a source of firearms' and was ready to procure them for his customers." *Id.* at 120-21. It was unnecessary to prove that the two defendants knew first-hand that the

illegal dealer did multiple firearms transactions. *Id.* Instead, other circumstances, such as the illegal dealer's "demonstrated[] familiarity with firearms and a fluency in the coded language" proved that the two defendants "knew [the illegal dealer] was not simply filling a one-time order but was in fact holding himself out more generally as a source of firearms." *Id.* at 121.

Similarly, the Ninth Circuit affirmed a conviction in which the defendant had "attempted to sell one firearm" because there was additional evidence that the defendant was engaging in illegal firearms dealing. *United States v. King*, 735 F.3d 1098, 1107 (9th Cir. 2013). In doing so, the court refuted the notion that direct evidence of multiple sales of firearms is required to show that a defendant is "engaged in the business" by reiterating that the GCA "does not require an actual sale of firearms." *Id.* at 1107 n.8 (citing *Nadirashvili*, 655 F.3d at 120); *see also United States v. Zheng Jian Shan*, 80 F. App'x 31, 32 (9th Cir. 2003) (affirming defendant's conviction for illegal dealing where "[a]lthough the Government provided evidence of the sale of weapons—arguably in only one transaction—it also submitted evidence of [defendant's] disposition as a person 'ready and able to procure' additional weapons").

The First Circuit has also held that a single transaction may constitute engaging in the business. In *United States v. Murphy,* 852 F.2d 1 (1st Cir. 1988), the defendant had undertaken a year of negotiations with a foreign buyer to sell

"102 rifles, a missile, [and] ammunition" that would have resulted in more than $35,000 dollars in profit. *Id.* at 8. "[T]his single transaction was sufficiently large in quantity, price and length of negotiation to constitute dealing in firearms." *Id.*; *see also United States v. Tarr* 589 F.2d 55, 59 (1st Cir. 1978) (noting that "a single transaction" could be "sufficiently large enough in number of guns and the price paid to constitute engaging in the business of dealing in firearms," even if "*ordinarily* one sale will not be sufficient to meet the statutory requirement.").

It defies any logical construction of the statute, to say nothing of common sense, to treat the sort of activity addressed in these appellate decisions and encompassed by the Final Rule as non-commercial, private sales. Yet this is exactly the construction Appellants demand, despite failing to engage with any of these authorities (all cited in the preamble to the Final Rule by ATF) or citing any to the contrary (because there are none).

### B. The "Engaged in the Business" Standard Turns on Intent to Profit, Not Actual Profit

The BSCA does not require proof of actual profit to demonstrate dealing in firearms. A person is "engaged in the business" when he "devotes time, attention, and labor to dealing in firearms as a regular course of trade or business to predominantly earn a profit," and "to predominantly earn a profit" means "*the intent* underlying the sale or disposition of firearms is predominantly one of obtaining pecuniary gain, as opposed to other *intents*." 18 U.S.C. § 921(a)(11)(A);

*id.* § 921(a)(21)(C); *id.* § 921(a)(22) (emphasis added). Not once does the statute

state, as Appellants contend, that a person is "engaged in the business" only when

"proof of profit" can be demonstrated. Appellants' Opening Br. 50.

Unsurprisingly, then, decisions interpreting the GCA have uniformly held that

intent to profit is all that is required—as must be the case, given that the statute

does not even require an actual sale. *See, e.g.*, *King*, 735 F.3d at 1107 n.8 (actual

sales not required); *United States v. Valdes*, 681 F. App'x 874, 877 (11th Cir.

2017) (actual profit not required); *United States v. Shipley*, 546 F. App'x 450, 454

(5th Cir. 2013) (per curiam) ("[A] conviction requires that the defendant had the

'principal objective' of making a profit, but it does not require that he succeeded in

that endeavor."); *United States v. Brown*, 185 F. App'x 635 (9th Cir. 2006)

(rejecting the defendant's "argument that 18 U.S.C. § 921(a)(22) requires the

government to prove actual profit for anyone who is not an arms dealer for

criminals or terrorists, for that construction would defy both logic and the structure

of the provision, which is a definition for 'principal objective of livelihood and

profit'"); *United States v. Mastro*, 570 F. Supp. 1388, 1391 (E.D. Pa. 1983) (actual

profit not required).

 Appellants' argument relies on the BSCA's statement that "proof of profit

shall *not* be required as to a person who engages in the regular and repetitive

purchase and disposition of firearms for criminal purposes or terrorism."

18 U.S.C. § 921(a)(22) (emphasis added); *see* Appellants' Opening Br. 50. According to Appellants, specifying that proof of profit is not required in those particular circumstances means such proof is required in all others. *See id.* But the GCA has long included this provision, *see* Pub. L. No. 99-360, § 1(b), 100 Stat. 766, 766 (1986), and no court has *ever* adopted Appellants' reading.

As with the other aspects of the Final Rule challenged by Appellants, ATF's decision to adopt a Rule drawing on longstanding judicial interpretations thus represents a permissible—indeed, eminently reasonable—exercise of congressionally delegated authority.

## CONCLUSION

The Court should affirm.

Respectfully submitted.

/s/ *Preet Bharara*

KELLY P. DUNBAR
SONIKA DATA
WILMER CUTLER PICKERING
   HALE AND DORR LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037
(202) 663-6000

PREET BHARARA
   *Counsel of Record*
JAY HOLTMEIER
ALEX W. MILLER
KIMBERLY WATERS
WILMER CUTLER PICKERING
   HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800

*Counsel for Amici Curiae*

November 27, 2024

# CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g)(1), I hereby certify that this brief complies with the type-volume limitation of Federal Rules of Appellate Procedure 32(a)(7)(B) and 29(a)(5).

1.      In compliance with Federal Rule of Appellate Procedure 32(a)(5)-(6) and Tenth Circuit Rule 32(A), the brief has been prepared in proportionally spaced Times New Roman font with 14-point type using Microsoft Word for Office 365.

2.      Exclusive of the exempted portions of the brief, as provided in Federal Rule of Appellate Procedure 32(f) and Tenth Circuit Rule 32(B), the brief contains 6,008 words. As permitted by Federal Rule of Appellate Procedure 32(g)(1), I have relied upon the word count feature of Microsoft Word in preparing this certificate.

/s/  *Preet Bharara*
PREET BHARARA

November 27, 2024

**CERTIFICATE OF SERVICE**

I hereby certify that on this 27th day of November, 2024, I electronically

filed the foregoing with the Clerk of the Court for the United States Court of

Appeals for the Tenth Circuit using the appellate CM/ECF system.  Counsel for all

parties to the case are registered CM/ECF users and will be served by the appellate

CM/ECF system.

/s/  Preet Bharara
PREET BHARARA