Case No. 24-3101

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE TENTH CIRCUIT

STATES OF KANSAS, IOWA, MONTANA, ALABAMA, ALASKA, GEORGIA,
IDAHO, INDIANA, KENTUCKY, MISSOURI, NEBRASKA, NEW HAMPSHIRE,
NORTH DAKOTA, OKLAHOMA, SOUTH CAROLINA, SOUTH DAKOTA,
TENNESSEE, VIRGINIA, WEST VIRGINIA, WYOMING, AND PHILLIP
JOURNEY, ALLEN BLACK, DONALD MAXEY,
AND CHISHOLM TRAIL GUN ASSOCIATION,
*Plaintiffs-Appellants,*

v.

MERRICK GARLAND, in his official capacity as Attorney General of the United
States, STEVEN DETTELBACH, in his official capacity as the Director of the
Bureau of Alcohol, Tobacco, Firearms, & Explosives of the United States
Department of Justice, and the BUREAU OF ALCOHOL, TOBACCO, FIREARMS,
& EXPLOSIVES,
*Defendants-Appellees.*

## APPELLANTS' REPLY BRIEF

Appeal from the United States District Court for the District of Kansas
Honorable Toby Crouse, District Court Judge
District Court Case No. 6:24-cv-01086-TC-TJJ

KRIS W. KOBACH
*Kansas Attorney General*

Anthony J. Powell
*Solicitor General*
Abhishek S. Kambli
*Deputy Attorney General*
Erin B. Gaide
*Assistant Attorney General*
Adam T. Steinhilber
*Assistant Solicitor General*

Office of the Kansas Attorney General
120 SW 10th Avenue, 2nd Floor
Topeka, Kansas 66612
Telephone: (785) 296-2215
Fax: (785) 296-3131
anthony.powell@ag.ks.gov
abhishek.kambli@ag.ks.gov
erin.gaide@ag.ks.gov
adam.steinhilber@ag.ks.gov
*Counsel for Plaintiff State of Kansas*
(additional counsel on signature page)

ORAL ARGUMENT REQUESTED

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................iii

GLOSSARY ...................................................................................ix

INTRODUCTION .......................................................................... 1

ARGUMENT ................................................................................. 2

    I.    The district court applied an incorrect standard ............. 2

    II.    Plaintiffs possess standing ................................................ 4

    a. Individual Plaintiffs have standing ................................... 6

    b. Plaintiff Chisholm Trail Antique Gun Association has standing .............................................................................. 10

    c. Plaintiff States have standing .......................................... 11

    III.    Plaintiffs are likely to succeed on merits ........................ 16

    a. The Rule exceeds ATF's statutory authority. ...................... 17

    b. The Rule is contrary to statute ........................................ 19

    c. The Rule is arbitrary and capricious ................................ 24

        i.    The Rule impermissibly institutes multi-factor balancing tests that do not provide meaningful clarity. ...................................................................... 24

        ii.    The departure from past practice without reasonable explanation violates the APA. ......................................... 25

        iii.    The Rule is impermissible vague ................................. 27

    d. The Rule is unconstitutional ............................................ 28

    IV.    The preliminary injunction factors favor Plaintiffs ........ 30

CONCLUSION ............................................................................. 32

CERTIFICATE OF COMPLIANCE ............................................. 40

CERTIFICATE OF DIGITAL SUBMISSION ............................... 40

**CERTIFICATE OF SERVICE**................................................................ 40

# TABLE OF AUTHORITIES

**Cases**

*Alaska v. U.S. Dep't of Educ.*,
  __ F. Supp. 3d ___, No. 24-1057-DDC-ADM, 2024 WL 3104578 (D.
  Kan. June 24, 2024) ............................................................................... 32

*Alexander v. Sandoval*,
  532 U.S. 275 (2001) ................................................................................. 2

*Am. Atheists, Inc. v. Davenport*,
  637 F.3d 1095 (10th Cir. 2010) ........................................................ 4, 16

*Automated Mktg. Sys. Inc. v. Martin*,
  467 F.2d 1181 (10th Cir. 1972) ............................................................... 3

*Babbitt v. United Farm Workers Nat'l Union*,
  442 U.S. 289 (1979) ................................................................................. 9

*Berdiev v. Garland*,
  13 F.4th 1125 (10th Cir. 2021) ....................................................... 2, 3, 4

*Brown v. Kemp*,
  86 F.4th 745 (7th Cir. 2023) .................................................................... 9

*Carpenters Indus. Council v. Zinke*,
  854 F.3d 1 (D.C. Cir. 2017) ............................................................. 12, 13

*City of Chicago v. Morales*,
  527 U.S. 41 (1999) ................................................................................. 27

*Colo. River Water Conservation Dist. v. United States*,
  424 U. S. 800 (1976) ................................................................................ 4

*Contender Farms, L.L.P. v. U.S. Dep't of Agric.*,
  779 F.3d 258 (5th Cir. 2015) ............................................................... 6, 7

*Does 1-11 v. Bd. of Regents of Univ. of Colo.*,

100 F.4th 1251 (10th Cir. 2024)............................................................. 4

*Elzour v. Ashcroft,*
378 F.3d 1143 (10th Cir. 2004) .................................................. 3

*Encino Motorcars, LLC v. Navarro,*
579 U.S. 211 (2016) ................................................................. 26

*Ezell v. City of Chicago,*
651 F.3d 684 (7th Cir. 2011) .................................................... 29

*F.C.C. v. Fox Television Stations, Inc.,*
556 U.S. 502 (2009) ........................................................... 25, 26

*Firearms Regul. Accountability Coal., Inc. v. Garland,*
112 F.4th 507 (8th Cir. 2024)............................................... 24, 25

*Free the Nipple-Fort Collins v. City of Fort Collins,*
916 F.3d 792 (10th Cir. 2019) .................................................. 31

*Friends of the Earth Inc. v. Laidlaw Env't Servs. (TOC) Inc.,*
528 U.S 167 (2000) ................................................................. 10

*Gardner v. Toilet Goods Ass'n,*
387 U.S. 167 (1967) ................................................................... 9

*Grayned v. City of Rockford,*
408 U.S. 104 (1972) ................................................................. 28

*Harmon v. City of Norman,*
981 F.3d 1141 (10th Cir. 2020) .................................................. 3

*Hill v. Colorado,*
530 U.S. 703 (2000) ................................................................. 27

*Initiative & Referendum Inst. v. Walker,*
450 F.3d 1082 (10th Cir. 2006) ..............................................5, 9

iv

*Johnson v. Terry,*
  119 F.4th 840 (11th Cir. 2024)................................................. 4

*Kansas v. U.S. Dep't of Lab.,*
  __ F. Supp. 3d ___, No. 2:24-CV-76, 2024 WL 3938839 (S.D. Ga. Aug. 26, 2024) ..................................................................... 23

*La. Pub. Serv. Comm'n v. Fed. Commc'ns Comm'n,*
  476 U.S. 355 (1986) ......................................................... 17

*Loper Bright Enters. v. Raimondo,*
  144 S. Ct. 2244 (2024) ...................................................... 17

*Lujan v. Defs. of Wildlife,*
  504 U.S. 555 (1992) .......................................................... 6

*Md. Shall Issue, Inc. v. Moore,*
  86 F.4th 1038 (4th Cir. 2023).............................................. 29

*Metro. Prop. & Cas. Ins. Co. v. Meza*, No. 18-CV-00505-MEH,
  2018 WL 11435257 (D. Colo. Oct. 12, 2018) ............................ 3

*Miss. Comm'n on Env't Quality v. E.P.A.,*
  790 F.3d 138 (D.C. Cir. 2015) ............................................ 25

*Missouri v. Biden,*
  112 F.4th 531 (8th Cir. 2024)......................................... 17, 18

*Mock v. Garland,*
  75 F.4th 563 (5th Cir. 2023)............................................... 25

*N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen,*
  597 U.S. 1 (2022) ........................................................... 29

*Nat'l Lab. Rels. Bd. v. Lily Transp. Corp.,*
  853 F.3d 31 (1st Cir. 2017)................................................ 26

*NCAA v. Governor of N.J.,*

730 F.3d 208 (3d Cir. 2013)................................................................. 13

*Nebraska v. Biden*,
52 F.4th 1044 (8th Cir. 2022)............................................................. 32

*New York v. Yellen*,
15 F.4th 569 (2d Cir. 2021) ............................................................... 12

*Org. for Black Struggle v. Ashcroft*,
978 F.3d 603 (8th Cir. 2020) ............................................................. 16

*Parents Protecting Our Child., UA v. Eau Clair Area Sch. Dist.*,
604 U.S. ___, No. 23-1280, 2024 WL 5036271 (Dec. 9, 2024).................. 4

*Sierra Club v. E.P.A.*,
955 F.3d 56 (D.C. Cir. 2020) ............................................................... 8

*Smith v. Albany Cnty. Sch. Dist. No. 1 Bd. of Trs.*,
121 F.4th 1374 (10th Cir. 2024).......................................................5, 6

*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83 (1998) ..........................................................................5, 6

*Susan B. Anthony List v. Driehaus*,
573 U.S. 149 (2014) ........................................................................... 9

*Texas v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*,
__ F. Supp. 3d ___, No. 2:24-CV-089-Z, 2024 WL 2967340 (N.D. Tex.
June 11, 2024) ...........................................................................22, 31

*Texas v. United States*,
809 F.3d 134 (5th Cir. 2015) *as revised* (Nov. 25, 2015) ............... 13, 16

*Thompson v. DeWine*,
976 F.3d 610 (6th Cir. 2020)............................................................. 16

*United States v. Carter*,
203 F.3d 187 (2d Cir. 2000) .............................................................. 21

vi

*United States v. Graham,*
   305 F.3d 1094 (10th Cir. 2002) .......................................................... 20

*United States v. Muhtorov,*
   20 F.4th 558 (10th Cir. 2021) ............................................................ 15

*United States v. Students Challenging Regul. Agency Process (SCRAP),*
   412 U.S. 669 (1973) ........................................................................ 14

*United States v. Tarr,*
   589 F.2d 55 (1st Cir. 1978) ................................................................ 21

*United States v. Texas,*
   579 U.S. 547 (2016) .......................................................................... 13

*United States v. Tyson,*
   653 F.3d 192 (3d Cir. 2011) ................................................................ 20

*Virginia v. Am. Booksellers Ass'n,*
   484 U.S. 383 (1988) ............................................................................ 9

*Wyo. Gun Owners v. Gray,*
   83 F.4th 1224 (10th Cir. 2023) ..................................................... 27, 28

*Wyoming v. Oklahoma,*
   502 U.S. 437 (1992) ..................................................................... 12, 15

*Wyoming v. U.S. Dep't of the Interior,*
   674 F.3d 1220 (10th Cir. 2012) ..................................................... 14, 15

*Young v. Robson,*
   429 F. App'x 716 (10th Cir. 2011) ...................................................... 15

## Statutes and Regulations

18 U.S.C. § 921 ................................................................. 18, 21, 22, 23

18 U.S.C. § 926 .................................................................................. 17

89 Fed. Reg. 28,968 (Apr. 10, 2024) ................................................ *passim*

89 Fed. Reg. at 29,054 ....................................................... 13

89 Fed. Reg. at 28,969 ....................................................... 26

89 Fed. Reg. at 28,970 ....................................................... 26

89 Fed. Reg. at 29,090 ......................................................... 7

89 Fed. Reg. at 29,091 ....................................................... 24

**Other Authorities**

ATF, *Do I Need A License to Buy and Sell Firearms?* (last updated May 2024), https://perma.cc/RX5R-7K47 ........................................ 8

*Black's Law Dictionary* (8th ed. 2004) .................................... 20

Philip K. Dick, *The Minority Report* (1956) ........................................ 1, 2

*Futurama: Law and Oracle* (Comedy Central television broadcast July 7, 2011) .................................................................... 1

*Webster's New World College Dictionary* (3d ed. 1997) .......................... 20

# GLOSSARY

**ATF:**       Bureau of Alcohol, Tobacco, Firearms and Explosives

**BSCA:**      Bipartisan Safer Communities Act, Pub. L. Section 3 of 117-159, 136 Stat. 1313 (2022)

**FFA:**       Federal Firearms Act of 1938, Pub. L. 75-785, 52 Stat. 1250 (June 30, 1938)

**FFL:**       Federal Firearms License

**Rule:**      Definition of "Engaged in the Business" as a Dealer in Firearms, 89 Fed. Reg. 28,968 (Apr. 10, 2024)

**FOPA:**      Firearm Owners Protection Act, Pub. L. 99-308, 100 Stat. 449 (May 19, 1986)

**GCA:**       Gun Control Act of 1968, Pub. L. 90-168, 82 Stat. 1213 (Oct. 22, 1968)

**TBI:**       Tennessee Bureau of Investigation

## INTRODUCTION

Defendants lay bare the "basic legalistic drawback"[1] with the Rule:[2] They can punish a person for being "engaged in the business" of dealing in firearms without a license before he has sold—or even attempted to sell—a single firearm.[3] But the Constitution and Congress forbid this dystopian regime.

The Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") claims authority to presume that a person it believes intends to sell more than one firearm without a federal license is breaking the law. While there are exceptions to this questionable presumption, that is only because Congress established that many people who *actually* do *repeatedly* sell firearms *for profit* are not "engaged in the business," and thus do not need a federal firearms license (FFL). Through the Rule, ATF has now effectively erased the congressional safe harbor, thereby

---

[1] Philip K. Dick, *The Minority Report* 72 (1956); *see also Futurama: Law and Oracle* (Comedy Central television broadcast July 7, 2011).

[2] Specifically, Definition of "Engaged in the Business" as a Dealer in Firearms, 89 Fed. Reg. 28,968 (Apr. 10, 2024).

[3] Defendants devote two subsections of their Response Brief (Subsections II.B–C) to doubling down on their assertion that a person can fall within the Rule without selling a firearm or profiting.

1

turning (formerly) law-abiding citizens into potential felons. This is not only wrong, it is against the law, as agencies do not have the authority to rewrite a statute. "Agencies may play sorcerer's apprentice but not the sorcerer himself." *Alexander v. Sandoval*, 532 U.S. 275, 291 (2001). This Rule is a crude attempt by ATF to play sorcerer.

The Rule focuses on the past intentions or future actions of the person now considering selling, trading, or exchanging a firearm. In short, its precrime presumptions allow Defendants to impose administrative, civil, and potentially criminal consequences on many "individuals who have broken no law."[4]

## ARGUMENT

## I.   The district court applied an incorrect standard

The district court applied an incorrect standard in evaluating Plaintiffs' preliminary injunction request. *See* OB at 39–40.[5] Because this was a legal error, it was "necessarily an abuse of discretion" entitling Plaintiffs to reversal. *See Berdiev v. Garland*, 13 F.4th 1125,

---

[4] Dick, *supra*, at 72.

[5] "OB" is the Opening Brief, "RB" is the Response Brief, and "Appx." is Plaintiffs' Appendix.

2

1132 (10th Cir. 2021) (quoting *Elzour v. Ashcroft*, 378 F.3d 1143, 1150 n.9 (10th Cir. 2004)).

Defendants meekly respond—in a footnote—that the district court quoted *Harmon*. RB at 28 n.2. No one denies that. Plaintiffs' argument is about the court's *application*, not its case *selection*. The district court took one sentence in *Harmon* out of context, which it then turned into a heightened standard that does not exist. *See* Appx. Vol. III at 11. The district court denied a preliminary injunction because Plaintiffs did not meet the district court's "new" self-created standard of establishing "that the state of play [was] so one-sided as to warrant injunctive relief." *Id.* Instead of applying *Harmon'*s straightforward rule that Plaintiffs only had to make "a prima facie case showing a reasonable probability" of success, the district court put forward a standard unsupported by any authority. *See Harmon v. City of Norman*, 981 F.3d 1141, 1146 (10th Cir. 2020) (quoting *Automated Mktg. Sys. Inc. v. Martin*, 467 F.2d 1181, 1183 (10th Cir. 1972)).

Defendants do not meaningfully address Plaintiffs' argument; thus, they have effectively conceded it. *See, e.g.*, *Metro. Prop. & Cas. Ins. Co. v. Meza*, No. 18-CV-00505-MEH, 2018 WL 11435257, at *3 (D. Colo.

Oct. 12, 2018); *cf. Johnson v. Terry*, 119 F.4th 840, 852 n.3 (11th Cir. 2024). This Court should, if nothing else, reverse so the district court can apply the correct standard. *See Berdiev*, 13 F.4th at 1132.

## II.    Plaintiffs possess standing

Defendants bend over backwards to get this Court to avoid the merits. But they have no choice in the matter if only one plaintiff has standing. *See Does 1-11 v. Bd. of Regents of Univ. of Colo.*, 100 F.4th 1251, 1266 (10th Cir. 2024); *Am. Atheists, Inc. v. Davenport*, 637 F.3d 1095, 1114 (10th Cir. 2010). Plaintiffs handily meet this standard. Defendants' arguments to the contrary are attempts to deprive anyone of the ability to sue over an unlawful regulation, and two flaws shine bright.[6]

---

[6] Justice Alito recently warned against this practice: "[S]ome federal courts are succumbing to the temptation to use the doctrine of Article III standing as a way of avoiding some particularly contentious constitutional questions. While it is important that federal courts heed the limits of their constitutional authority, it is equally important that they carry out their 'virtually unflagging obligation . . . to exercise the jurisdiction given them.'" *Parents Protecting Our Child., UA v. Eau Clair Area Sch. Dist.*, 604 U.S. ___, No. 23-1280, 2024 WL 5036271, at *1 (Dec. 9, 2024) (Alito. J., dissenting from denial of certiorari) (quoting *Colo. River Water Conservation Dist. v. United States*, 424 U. S. 800, 817 (1976)).

*First*, Defendants repeatedly ignore evidence in the record that shows how the Rule harms Plaintiffs. *See, e.g.*, Appx. Vol. I at 88 (Plaintiff Phillip Journey discussing how he sometimes replaces his firearms that are primarily for personal protection by selling them). From being required to obtain an FFL, to having fewer gun show attendees, to losing out on sales tax revenue and increased administrative costs, the Rule directly, tangibly, and concretely harms Plaintiffs.

*Second*, Defendants' arguments on standing are really arguments on the merits.[7] In other words, they are trying to argue the merits first, in order to attack standing. But standing is a *separate* inquiry. *See Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082, 1093 (10th Cir. 2006) (*en banc*); *see also Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998). Otherwise, every "claim would be dismissed for want of standing" if it was not an uncontested win for the plaintiff. *See Walker*, 450 F.3d at 1092; *see also Smith v. Albany Cnty. Sch. Dist. No. 1 Bd. of*

---

[7] The district court also committed this error, allowing its view on the merits to color its view on standing. *See* Appx. Vol. III at 7 (asserting that Plaintiffs' standing arguments undermined their merits arguments).

*Trs.*, 121 F.4th 1374, 1378 (10th Cir. 2024) (same). Accordingly, this Court should presume Plaintiffs' interpretation of the Rule is correct to avoid confusing standing with the merits. *See Citizens for a Better Env't*, 523 U.S. at 89.

### a. Individual Plaintiffs have standing

At the outset, Individual Plaintiffs have standing to challenge the Rule. As people who regularly sell, buy, and trade firearms, they are the "direct objects" of the regulation and thus have standing to challenge it. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561–62 (1992); *Contender Farms, L.L.P. v. U.S. Dep't of Agric.*, 779 F.3d 258, 264–65 (5th Cir. 2015).

To the extent Defendants argue Individual Plaintiffs' conduct does not fall under the Rule, they are mistaken. Individual Plaintiffs here (a) own firearms (often for personal protection), (b) sell them (from their personal collections), (c) have sold more than one firearm, and (d) purchase firearms. According to Defendants, this adds up to the presumption that they are "engaged in the business." *See* 89 Fed. Reg. at 29,091. "Whether someone is in fact an object of a regulation is a flexible inquiry rooted in common sense." *Contender Farms, L.L.P.*, 779

F.3d at 265. And it defies common sense to conclude that Individual

Plaintiffs are anything but the "regulated objects."

Defendants do not confront this reality. Rather, they suggest

exceptions apply, so Plaintiffs' conduct is not outlawed. They argue that

Plaintiffs Phillip Journey and Allen Black's firearms fall under the

"personal collection" exception. RB at 13–16. But Defendants excluded

firearms for personal protection from the definition of "personal

collection." Judge Journey and Mr. Black purchased firearms for self-

defense (another word for "personal protection"), Appx. Vol. I at 87, 96,

and therefore those firearms would *not* be considered part of a "personal

collection" by the Rule, *see* 89 Fed. Reg. at 29,090. And Defendants'

efforts to single out Plaintiff Donald Maxey also fail: The Rule directly

harms him because it both reduces the number of firearm sellers from

whom he can buy, and it could ensnare him should he later decide to

sell a firearm.

Defendants also suggest that because Individual Plaintiffs only

"occasionally" buy and sell firearms as part of a hobby, they may do so

without worry. RB at 14–16. But the Rule does not clearly differentiate

between an "occasional" sale and a "repetitive" sale. Defendants admit

that someone can be punished for violating the Rule without making even one sale as long as ATF (subjectively) believes that he was intending to do so more than once. And ATF agents have told gun show organizers that they interpret the Rule differently. *See, e.g.*, Appx. Vol. II at 140 (professional gun show promoter Rex Kehrli confirming that ATF agents with whom he had spoken were "uncertain about" the Rule's meaning and that speaking to different agents would result in different interpretations). Individual Plaintiffs' concerns can hardly be alleviated by such uncertainty.

ATF's 33-page "guidance" changes nothing. RB at 15 n.1. Guidance documents are—by definition—not binding on the agency; otherwise, they would be rules. *See Sierra Club v. E.P.A.*, 955 F.3d 56, 62–63 (D.C. Cir. 2020). Indeed, the guidance here expressly affirms that it "has *no regulatory legal effect* and is not intended to create or confer any rights, privileges, or benefits in any matter, case, or proceeding." ATF, *Do I Need A License to Buy and Sell Firearms?* PDF pg. 4, (last updated May 2024), https://perma.cc/RX5R-7K47 (emphasis added).

If it is even a question whether the Rule affects Individual Plaintiffs, then they have standing. A party has standing to challenge a

regulation when he is placed in a "quandary" where he can either test the regulation by waiting for an enforcement action or comply with the regulation and incur the associated costs. *Gardner v. Toilet Goods Ass'n*, 387 U.S. 167, 172–73 (1967).

In the complaint and declarations, Individual Plaintiffs have plausibly asserted that their "intended future conduct is *arguably* proscribed by the [Rule]." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 162 (2014) (cleaned up) (emphasis added); *see also Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979) ("[A] plaintiff does not need to show or confess that h[is] intended conduct will actually violate the statute in question if enforcement is likely against h[im]."); *Brown v. Kemp*, 86 F.4th 745, 761 (7th Cir. 2023) (explaining same). And again, Plaintiffs' interpretation of the Rule—not ATF's—carries the day. *See Walker*, 450 F.3d at 1093.

Finally, Individual Plaintiffs established standing because they will stop exercising their rights out of "an actual and well[-]founded fear" that the law will be enforced against them." *Brown*, 86 F.4th at 761 (quoting *Virginia v. Am. Booksellers Ass'n*, 484 U.S. 383, 393 (1988)). Individual Plaintiffs said they will stop selling guns (which they

otherwise have a right to do) because of the Rule. *See, e.g.*, App. Vol. I at 89–94 (Judge Journey); *id.* at 96–97 (Mr. Black). They have been injured and have standing.

At bottom, the Rule targets Individual Plaintiffs, a common-sense conclusion that Defendants' spurious arguments cannot undo.

### b. Plaintiff Chisholm Trail Antique Gun Association has standing

The Court's standing analysis can end with Individual Plaintiffs. And because Mr. Black and Mr. Maxey have standing and are also members of an organization whose purpose is related to their regulated conduct, that organization, Plaintiff Chisholm Trail, has organizational standing. *See Friends of the Earth Inc. v. Laidlaw Env't Servs. (TOC) Inc.*, 528 U.S 167, 181 (2000). Regardless, the Rule directly harms Chisholm Trail, so it has independent standing.

Approximately 70% of Chisholm Trail's annual operating expenses are covered by its biannual gun shows, which have already seen a decrease in vendors since the Rule has been effective. OB at 31. And a decrease in vendors logically means a decrease in table rental fees (fewer people needing tables) and attendees (fewer buying tickets). *See id.*

10

Defendants contend that Chisholm Trail's harm is speculative because it depends on the actions of third-parties not before the court. RB at 18–19. Not so. All necessary parties are here: the enforcers (Defendants), the gun show attendees who buy and sell firearms (Individual Plaintiffs), and the gun show host (Chisholm Trail). In other words, the Rule's effects play out through the parties before this Court. Defendants have not cited a case requiring Chisholm Trail to make *every single gun show attendee and gun show host* part of this suit. Such a requirement would be absurd.

Individual Plaintiffs (two of whom are members of Chisholm Trail) have had to change their behavior because of the Rule, Chisholm Trail has already seen the effects of the Rule, and ATF is a party to this suit. Further evidence demonstrates the Rule's impact on gun shows. *E.g.*, Appx. Vol. II at 139–141. There is no other necessary party or showing. Chisholm Trail, as an organization and a direct victim, has standing.

### c. Plaintiff States have standing

Plaintiff States also have standing because the Rule directly and concretely harms them.

Again, Defendants attempt to resist reality. They claim that
Plaintiff States losing tax revenue is too speculative and attenuated to
support standing. RB at 20–26. But when it is "undisputed" that federal
action will cause or is causing states to lose specific tax revenue, they
have standing. *Wyoming v. Oklahoma*, 502 U.S. 437, 448 (1992). And
here, there is no question about the specific lost tax revenue. As shown
by Individual Plaintiffs and Chisholm Trail, the Rule causes fewer sales
and fewer gun show attendees. And it is undisputed that Plaintiff
States receive more revenue when there are more sales and more
attendees. Basic economic logic and common sense support Plaintiff
States. *See Carpenters Indus. Council v. Zinke*, 854 F.3d 1, 6 (D.C. Cir.
2017) (Kavanaugh, J.); *New York v. Yellen*, 15 F.4th 569, 577 (2d Cir.
2021).

Notably, Defendants focus on lost tax revenue from decreased
sales of firearms, even positing that willing buyers would spend their
money elsewhere. RB at 22–23. The Court should discount Defendants'
speculative offsets completely;[8] courts do not engage in "accounting

---

[8] Defendants' speculation about these firearm sales moving to brick-
and-mortar gun stores, is also impossible, with respect to many such
sales. Gun shows offer buyers the opportunity to purchase hard-to-find

exercise[s]" when considering standing. *Texas v. United States*, 809 F.3d 134, 156 (5th Cir. 2015) *as revised* (Nov. 25, 2015) (quoting *NCAA v. Governor of N.J.*, 730 F.3d 208, 223 (3d Cir. 2013)), *aff'd by an equally divided Court*, *United States v. Texas*, 579 U.S. 547 (2016). But in any case, it is not simply a matter of fewer options for buyers. Kansas collects sales tax on table rental fees, so *any* decrease in sellers at gun shows (like those hosted by Chisholm Trail) necessarily means a decrease in tax revenue. *See* OB at 31; *Carpenters Indus. Council*, 854 F.3d at 6. Chisholm Trail most recently paid Kansas $4,005.72 in sales tax over a fiscal year, and the organization expects the Rule to decrease the amount it will pay Kansas moving forward. Appx. Vol. I at 100. The Rule even admits it will decrease the numbers of unlicensed firearms "dealers." *See* 89 Fed. Reg. at 29,054. Defendants do not confront revenue from table rentals, effectively conceding that the Rule decreases Kansas's tax revenue. At a minimum, the State of Kansas has standing.

---

used firearms not available in most stores. And many buyers attend gun shows because sellers are in direct competition in the same venue, offering buyers an advantage. *See* Appx. Vol. II at 137–38 (Chipley Declaration).

In arguing against standing, Defendants cite *Wyoming v. U.S. Department of the Interior*, 674 F.3d 1220, 1234 (10th Cir. 2012), for the proposition that lost tax revenue does not confer standing. RB at 22. But *Wyoming* did "not foreclose the argument that reduced tax revenues can provide a state with Article III standing." 674 F.3d at 1234. And it acknowledged that "the extent of the injury is not relevant to determination of standing," meaning one dollar in lost tax revenue is enough. *See id.* at 1234 n.8; *see also United States v. Students Challenging Regul. Agency Process (SCRAP)*, 412 U.S. 669, 689 n.14 (1973). In *Wyoming*, the "[p]etitioners . . . failed to show *any* concrete injury in fact." 674 F.3d at 1234 n.8. But here, as noted previously, Plaintiff States (particularly Kansas) have shown a "fairly direct link between" the Rule and decreased revenue. *Id.* at 1234. Such a common-sense, direct link is more than enough. The fact that the loss of revenue is dependent on the predicable actions of independent actors does not defeat a state's standing. Defendants' cited cases involving indirect links or attenuated injuries are irrelevant. *See* RB at 21–22.

Plaintiff States have provided evidence of the specific tax revenue lost due to the Rule, which Defendants try to undermine *without*

14

questioning its accuracy or presenting any evidence of their own to counter it. The evidence is undisputed, and it establishes the direct link between Defendants' actions and Plaintiff States' injuries. The only speculation comes from Defendants, who assert without evidence that a decrease in sellers (and buyers) will somehow have no impact on tax revenue. They are the ones guessing about the actions of independent actors, not Plaintiff States. *See United States v. Muhtorov*, 20 F.4th 558, 594 n.14 (10th Cir. 2021) ("As an appellate court, we rely on the record and avoid conjecture about extra-record occurrences."); *cf. Young v. Robson*, 429 F. App'x 716, 729 (10th Cir. 2011) ("[W]e will not consider this evidence because it is not properly part of the record on appeal.").

Defendants fault Plaintiff States for not providing a "limiting principle." RB at 25. But this is a policy argument, not a legal argument. And the law establishes that a direct loss of tax revenue from federal action confers standing on the impacted states. *See Wyoming*, 502 U.S. at 448; *Wyoming*, 674 F.3d at 1234. The law also provides the "limiting principle" that an injury be concrete, as opposed to speculative. And Plaintiff States' asserted injuries are concrete. Indeed, many have already occurred.

Finally, Defendants target Tennessee and New Hampshire, alleging that increased costs of background checks are "self-imposed" injuries incapable of supporting standing. RB at 26–27. But these harms cannot be self-imposed if the only way to avoid them is to change state law. Such a forced change harms their sovereignty. *See Texas*, 809 F.3d at 152; *Thompson v. DeWine*, 976 F.3d 610, 619 (6th Cir. 2020); *Org. for Black Struggle v. Ashcroft*, 978 F.3d 603, 609 (8th Cir. 2020). Tennessee and New Hampshire, like the remaining Plaintiff States, have standing.

\* \* \*

Plaintiffs have repeatedly shown the Rule directly harms them. The only speculation comes from Defendants, who do not even contest that Kansas will lose tax revenue from fewer table rentals. Because at least one Plaintiff has standing, this Court proceeds to the merits. *See Am. Atheists, Inc.*, 637 F.3d at 1114.

## III.   Plaintiffs are likely to succeed on the merits

As previously noted (and effectively conceded by Defendants), the district court held Plaintiffs to an incorrect, heightened standard. But

Plaintiffs meet the proper standard and so are entitled to a preliminary injunction.

### a. The Rule exceeds ATF's statutory authority

At bottom, this case is about executive fiat running into congressional statute. The latter wins. A federal agency may only act within the confines of its congressionally-conferred authority, *La. Pub. Serv. Comm'n v. Fed. Commc'ns Comm'n*, 476 U.S. 355, 357 (1986), which courts enforce, *see Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244, 2263 (2024). This means that the Rule's purposes, no matter how well-intentioned, are *irrelevant* if the Rule exceeds ATF's authority. And here, it does. Congress only authorized ATF to promulgate "necessary" rules and regulations. *See* 18 U.S.C. § 926(a). This means that any rule not strictly necessary is *ultra vires. Cf. id.* And because Congress already defined "engaged in the business," the Rule is unnecessary.

Defendants fault Plaintiffs for not citing a case to support the proposition that an agency cannot define a term already defined by Congress. A case cite is not necessary for this common-sense principle. Regardless, courts have previously recognized that an agency may not attempt to rewrite Congress's language. *See, e.g.*, *Missouri v. Biden*, 112

17

F.4th 531, 536–37 (8th Cir. 2024) (rejecting attempt to redefine statute to allow for additional avenue of loan forgiveness). And Defendants' argument sidesteps Plaintiffs' *expressio unius* argument. *See* OB at 42–45. Congress explicitly vested ATF with the power to define only "curios or relics," which necessarily deprived the agency of the authority to define other terms. *See id.*; 18 U.S.C. § 921(a)(13). Indeed, if ATF could go ahead and define any term it wishes, it would have been a waste of words for Congress to explicitly empower ATF to define "curios or relics."

A "necessary" definition is one that Congress directed the agency to create, not an agency's attempt to redefine an *already-defined* term. Congress has both defined the relevant term *and* ATF's authority to define terms in general. When this occurs and the agency still attempts to define an already-defined term, at best, the agency's own definition simply duplicates the congressional definition and is pointless. At worst (as here), it expands the agency's authority.

Congress has not empowered ATF to define "engaged in the business." Instead, it has done quite the opposite. The Rule is an illegal agency power grab, and injunctive relief is necessary to quash it.

18

### b. The Rule is contrary to statute

Even if Defendants could implement a regulation covering the activity at issue, it could not conflict with federal statutory law. And here, the Rule does just that.

Defendants' statutory arguments prove Plaintiffs' point. They argue that a person can be "engaged in the business" without (a) selling a single firearm or (b) making a single dollar in profit. *See* RB 33–38.

Defendants claim that "[f]ederal law does not set a numerical threshold" for firearms transactions necessary for a license, RB at 33, and that "the requirement to obtain a dealer's license may attach[] even before a sale has been consummated," RB at 37. Defendants flesh out this point with an example of a gun store owner, claiming they can punish this person for setting up a store before ever making a single sale. *Id.* at 34. And the ability to be punished based on future intentions is exactly what Individual Defendants fear. Judge Journey and Mr. Black repeatedly sell firearms that fall outside the Rule's absurdly narrow definition of "personal collection." *See* OB at 12–13. Accepting Defendants' arguments, Judge Journey and Mr. Black arguably fall

19

under the Rule if during one of their sales, they intend to make just one dollar.

The Rule permits ATF to punish people for their own subjective intent, even though Congress never gave ATF the authority to do so.

Defendants' arguments also go against the statutory scheme. Congress required actual, repetitive purchase and resale of firearms before a person was required to obtain a license. *See United States v. Tyson*, 653 F.3d 192, 200–01 (3d Cir. 2011). Several "clues" bolster this reality:

- "Dealing": "Dealing" means regular commercial activity, and a dealer is "a person who purchases goods or property for sale to others, a retailer." *Black's Law Dictionary* 427 (8th ed. 2004).

- "Engaged in the Business": "The term 'engage' is commonly defined as 'to occupy or involve oneself; take part; be active.'" *United States v. Graham*, 305 F.3d 1094, 1102 (10th Cir. 2002) (quoting *Webster's New World College Dictionary* 450 (3d ed. 1997)). And "business" is "'the buying and selling of commodities and services; commerce; trade.'" *Id.* (quoting *Webster's*, *supra*, at 189). So, a person cannot be "engaged in

the business" unless he is active in the buying or selling of firearms. Merely intending to buy and sell is not sufficient. *See also United States v. Tarr*, 589 F.2d 55, 59 (1st Cir. 1978) (recognizing that "[t]he words 'to engage in the business of' strongly imply more than one isolated sale or transaction," and "'dealing' connotes a regular course of conduct carried on over a period of time or, at least, on more than one or two unrelated occasions"); *United States v. Carter*, 203 F.3d 187, 191 (2d Cir. 2000) (same).

- Relevant terms are plural—"[s]ales," "purchases," resales," and "firearms"—meaning more than one is required. *See* 18 U.S.C. § 921(a)(22) (exempting "occasional sales, exchanges, or purchases of firearms"). In other words, someone has to sell more than one firearm to be deemed a dealer.

- "Repetitive": There must be more than one sale. *See* 18 U.S.C. § 921(a)(21)(C).

- "[T]o predominantly earn a profit" modifies "the intent underlying the sale or disposition of firearms." *See* 18 U.S.C. § 921(a)(22). The statute does not say "the intent underlying

21

the intended sale" must be *for* profit. Thus, actual sale is necessary.

Congress's words establish that a person must obtain an FFL only by engaging in the actual, repetitive purchase and resale of firearms.

Defendants have no statutory authority for their argument. They disregard that Congress passed the Firearm Owners Protection Act to narrow the definition of "engaged in the business." *See* OB at 4–8.

Profit is also required. *See* OB at 50–51. The statute does not say "proof of intent to profit"; it says "proof of profit." 18 U.S.C. § 921(a)(22). As the Northern District of Texas observed regarding the Rule, "The negative corollary is obvious: while proof of profit is *not* required 'for criminal purposes or terrorism,' it *is* required for all other cases." *Texas v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, __ F. Supp. 3d ___, No. 2:24-CV-089-Z, 2024 WL 2967340, at *8 (N.D. Tex. June 11, 2024) (quoting 18 U.S.C. § 921(a)(22)). And how ATF will determine whether a person subjectively intends to profit if that person does not actually make a sale—and thereby falls within the Rule—remains a mystery. The cases Defendants cite (out-of-circuit and unpublished) show that the people involved made repeated sales. *See* RB at 37–38.

22

Finally, the Rule attempts to erase the statutory safe harbor provision: the personal collection exception. The Rule's personal protection exception to the personal collection exception eliminates Congress's intended safe harbor provision. Congress did not say a person shall not be *presumed* to be a dealer if he sells from his personal collection. Congress said "dealers" shall not *include* people who sell from their personal collection. *See* 18 U.S.C. § 921(21)(C). And Congress did not say the purpose for which the firearm was initially acquired matters. *Cf. id.* Federal agencies cannot undo congressional definitions. *See, e.g.*, *Kansas v. U.S. Dep't of Lab.*, __ F. Supp. 3d ___, No. 2:24-CV-76, 2024 WL 3938839, at *7–9 (S.D. Ga. Aug. 26, 2024) (finding a congressional definition foreclosed a rule that provided agricultural workers with collective bargaining rights). There is no statutory basis to exclude firearms used for personal protection, which potentially means every functioning firearm.

Simply put, even if ATF had authority to issue the Rule, the Rule conflicts with federal *statutory* law in multiple respects, so it cannot stand.

### c. The Rule is arbitrary and capricious

Even if ATF was authorized to issue the Rule (it was not) and the Rule did not conflict with federal statutory law (it does), the Rule further fails the Administrative Procedure Act (APA) because it is arbitrary and capricious. The Rule not only implements multi-factor balancing tests to determine the legal fate of thousands of law-abiding gun owners (like Individual Plaintiffs), it is also a sharp departure from past practice without reasonable explanation and it is impermissibly vague.

### i. The Rule impermissibly institutes multi-factor balancing tests that do not provide meaningful clarity

The Rule—through its multi-factor balancing tests—provides ATF with power at the expense of providing the "regulated objects" (law-abiding gun owners) with clarity. *See* 89 Fed. Reg. at 29,091. But Defendants cannot hide behind a "fact-specific inquiry," as though it does gunowners a favor. Courts regularly reject multi-part balancing tests (including those promulgated by ATF) when the results of the test are unpredictable. *See Firearms Regul. Accountability Coal., Inc. v.*

*Garland*, 112 F.4th 507, 524 (8th Cir. 2024); *Mock v. Garland*, 75 F.4th 563, 584 (5th Cir. 2023). This case is no different. *See* OB at 52–55.

An agency cannot use the regulatory process as a trap for unwary citizens. The Byzantine Rule does just that, creating a "holistic, multi-factor, weight-of-the-evidence test" that no one can follow, thereby imbuing Defendants with near unlimited authority. *See Firearms Regul. Accountability Coal., Inc.*, 112 F.4th at 524 (quoting *Miss. Comm'n on Env't Quality v. E.P.A.*, 790 F.3d 138, 150 (D.C. Cir. 2015)). And that violates the APA.

### ii. The departure from past practice without reasonable explanation violates the APA

The Rule runs afoul of the APA in yet another respect, this time because it departs from past practice without explanation. *See* OB at 55–56.

Defendants do not deny that the Rule departs from past practice. *Cf.* RB at 42–43. And because they did not recognize this departure when they promulgated the Rule, it is necessarily arbitrary and capricious. *See F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009) ("An agency may not . . . depart from a prior policy *sub silentio*[.]"). All Defendants can point to is a general recognition that

they considered defining the relevant term *before* Congress did so itself. *See* RB at 43 (citing 89 Fed. Reg. at 28,969–70). That is not enough. *See Fox Television Stations, Inc.*, 556 U.S. at 515 (recognizing that an agency must "display awareness that it *is* changing position").

When ATF departs from past practice, Congress (through the APA) requires it to do the bare minimum and reasonably explain this departure. Indeed, "a change must be addressed expressly, at least by the agency's articulate recognition that it is departing from its precedent." *Nat'l Lab. Rels. Bd. v. Lily Transp. Corp.*, 853 F.3d 31, 36 (1st Cir. 2017) (Souter, J.). While "[a]gencies are free to change their existing policies," they must still "provide a reasoned explanation for the change." *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221 (2016). Here, ATF neither acknowledged the change nor reasonably explained why it has materially altered Congress's definitions. *See* OB at 55.

ATF did not acknowledge the Rule's departure from past practice, and it certainly did not provide reasonable explanation. As with the Rule's other flaws, this failure once again deprives unwary citizens of fair notice that their conduct has now been outlawed.

### iii.  The Rule is impermissibly vague

Last but not least, the Rule is also impermissibly vague. *See* OB at 56–60. As previously noted, no person of reasonable intelligence could understand whether his conduct is unlawful under the Rule, and the Rule does not provide sufficient guideposts for the police and the public. *See City of Chicago v. Morales*, 527 U.S. 41, 52, 60 (1999).

*First*, the Rule guts the personal collection safe harbor, because not only does it violate statutory law, it does not provide guidance on when a weapon is one that is purchased primarily "for personal protection" (and thus outside the safe harbor). Instead, the Rule requires Defendants to determine the subjective intent of the purchaser, a difficult task that may not have a clear answer and leaves it open to arbitrary enforcement. *See* OB at 58; *Hill v. Colorado*, 530 U.S. 703, 732 (2000) (recognizing that a law authorizing or encouraging "arbitrary and discriminatory enforcement" is "impermissibly vague); *Wyo. Gun Owners v. Gray*, 83 F.4th 1224, 1237 (10th Cir. 2023) (discussing dangers of impermissibly vague laws).

*Second*, the Rule provides no guidance on what "other evidence" may support Defendants' determination that a person is a dealer

27

despite selling a single firearm. *See* OB at 58–59. Again, the Rule simply vests Defendants with nearly unlimited discretion and the ability to only consider their desired evidence.

*Finally*, the Rule is the very definition of vague. With its presumptions, exceptions, and exceptions to the exceptions (through a catch-all), any ordinary person who wants to sell a firearm or two would be hard-pressed to determine with any clarity whether he needed to obtain an FFL, lest he risk civil and criminal penalties. *See* OB at 59–60. The only things clear about this Rule are (1) Defendants have more power and (2) gun owners should be scared. *See Wyo. Gun Owners*, 83 F.4th at 1237 (recognizing that an impermissibly vague law "delegates basic policy matters . . . for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application" (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 108–09 (1972)).

### d. The Rule is unconstitutional

In addition to its numerous statutory violations, the Rule violates the Constitution.

In *Bruen*, the Supreme Court left no doubt that the Second Amendment is not a second-class right. This means that when the

"Amendment's plain text covers an individual's conduct," that conduct is presumptively constitutional and the government must show that its regulation "is consistent with the Nation's historical tradition of firearm regulation" for its regulation to survive. *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 24 (2022). Defendants fail to make this showing.

Because the Second Amendment protects the right to keep and bear arms, it necessarily protects the ability to obtain arms. *See Md. Shall Issue, Inc. v. Moore*, 86 F.4th 1038, 1043 (4th Cir. 2023). Without protecting the ability to purchase a firearm, the Second Amendment would have no teeth because the government could simply (as it attempts to do here) overregulate sellers. And the ability to sell a firearm is also protected. *See Ezell v. City of Chicago*, 651 F.3d 684, 704 (7th Cir. 2011).

Because the regulated conduct is protected, Defendants must point to a sufficient historical analogy. And they have not. Their attempt to equate this situation to a "shall-issue" licensing regime falls flat because those regimes necessarily do not grant the government discretion. *Cf. Bruen*, 597 U.S. at 79 (Kavanaugh, J., concurring). By

contrast, as previously noted here and in the Opening Brief, the Rule is the opposite of a shall-issue regime. It vests Defendants with vague, fulsome discretion to "commercialize" transactions involving firearms and thereby punish those transactions that occur without licenses. And Defendants' further historical points fail to establish any history and tradition of the government regulating the sale of firearms between private individuals.

Defendants failed to show sufficient history and tradition of equivalent laws to support the Rule. And because the Rule targets conduct covered by the Second Amendment, it violates the Constitution.

## IV.    The preliminary injunction factors favor Plaintiffs

The remaining preliminary injunction factors establish Plaintiffs are entitled to relief. *See* OB at 63–64.

Defendants concede that if Plaintiffs have standing, they have established irreparable harm. *See* RB at 49. And as previously noted, Plaintiffs all have standing because they are all harmed by the Rule, either from being subject to this new regulatory regime (Individual Plaintiffs), losing revenue from gun shows (Chisolm Trail), or from losing tax revenue from decreased firearms sales, fewer gun show

attendees, and fewer table rentals, as well having their sovereignty violated (Plaintiff States). *See* Section II, *supra*.

The equities and the public interest also favor Plaintiffs. Plaintiffs have thoroughly demonstrated irreparable harm, and Defendants have no interest in enforcing an unlawful and unconstitutional regulation. And it is "always in the public interest to prevent the violation of a party's constitutional rights." *Free the Nipple-Fort Collins v. City of Fort Collins*, 916 F.3d 792, 807 (10th Cir. 2019). The public has no interest in the government violating the constitutional rights of others. *Id.* Defendants will not be harmed by an injunction, because they can continue to enforce the (lawful) licensing regime established by statute.

Defendants attempt to limit the scope of injunctive relief. *See* RB at 50. But because the entire Rule is unlawful, *see* Section III *supra*, it must be wholly enjoined. Additionally, a nationwide injunction is appropriate because Plaintiffs include twenty states, and the Rule is already enjoined from being enforced in four other states (including one in this Circuit). *See Texas*, 2024 WL 2967340, at *1 (forbidding enforcement of the Rule in Texas, Louisiana, Mississippi, and Utah). The Rule is broad, so it "requires a broad injunction" that ensures an

31

individual who resides in one of Plaintiff States does not suddenly need an FFL simply because he attended a gun show in another state where he ended up selling a personal firearm. *See Alaska v. U.S. Dep't of Educ.*, __ F. Supp. 3d ___, No. 24-1057-DDC-ADM, 2024 WL 3104578, at *19 (D. Kan. June 24, 2024) (issuing nationwide injunction); *Nebraska v. Biden*, 52 F.4th 1044, 1048 (8th Cir. 2022) (discussing importance of nationwide injunction).

Because the remaining factors support Plaintiffs, they are entitled to a preliminary injunction.

## CONCLUSION

For the foregoing reasons, this Court should reverse.

Respectfully submitted,

KRIS W. KOBACH
Kansas Attorney General

*/s/*Adam T. Steinhilber
Anthony J. Powell
*Solicitor General*
Abhishek S. Kambli
*Deputy Attorney General*
Erin B. Gaide
*Assistant Attorney General*
Adam T. Steinhilber
*Assistant Solicitor General*
Office of the Kansas Attorney General

32

120 SW 10th Avenue, 2nd Floor
Topeka, Kansas 66612
Telephone: (785) 296-2215
Fax: (785) 296-3131
anthony.powell@ag.ks.gov
abhishek.kambli@ag.ks.gov
erin.gaide@ag.ks.gov
adam.steinhilber@ag.ks.gov

*Counsel for Plaintiff State of Kansas*

BRENNA BIRD
Iowa Attorney General

*/s/ Eric H. Wessan*
Eric H. Wessan
*Solicitor General*
Office of the Iowa Attorney
General
1305 E. Walnut Street
Des Moines, Iowa 50319
(515) 281-5164
Eric.Wessan@ag.iowa.gov

*Counsel for Plaintiff State of Iowa*

AUSTIN KNUDSEN
Montana Attorney General

*/s/ Christian B. Corrigan*
Christian B. Corrigan
*Solicitor General*
Peter M. Torstensen, Jr.
*Deputy Solicitor General*
Montana Department of Justice
215 N. Sanders Street
Helena, Montana 59601
(406) 444-2707
christian.corrigan@mt.gov
peter.torstensen@mt.gov

*Counsel for Plaintiff State of Montana*

STEVE MARSHALL
Alabama Attorney General

*/s/ Edmund G. LaCour, Jr.*
Edmund G. LaCour, Jr.
*Solicitor General*
Office of the Alabama
Attorney General
501 Washington Avenue
P.O. Box 300152
Montgomery, AL 36130
Telephone: (334) 242-7300
Fax: (334) 353-8400
Edmund.LaCour@AlabamaAG.gov

*Counsel for Plaintiff State of
Alabama*

CHRISTOPHER CARR
Georgia Attorney General

*/s/ Stephen Petrany*
Stephen Petrany
*Solicitor General*
Office of the Attorney General of
Georgia
Georgia Department of Law
40 Capitol Square SW
Atlanta, Georgia 30334
(404) 458-3408
spetrany@law.ga.gov

*Counsel for Plaintiff State of
Georgia*

TREG R. TAYLOR
Alaska Attorney General

*/s/ Aaron C. Peterson*
Aaron C. Peterson
*Senior Assistant Attorney
General*
Department of Law
1031 West Fourth Avenue, Ste.
200
Anchorage, AK 99501
Telephone: (907) 269-5232
Fax: (907) 276-3697
aaron.peterson@alaska.gov

*Counsel for Plaintiff State of
Alaska*

RAÚL R. LABRADOR
Idaho Attorney General

*/s/ Joshua N. Turner*
Joshua N. Turner
*Chief of Constitutional Litigation
and Policy*
Alan M. Hurst
*Solicitor General*
Office of the Idaho Attorney
General
P.O. Box 83720
Boise, Idaho 83720
Tel: (208) 334-2400
Josh.turner@ag.idaho.gov
Alan.hurst@ag.idaho.gov

*Counsel for Plaintiff State of
Idaho*

TODD ROKITA
Indiana Attorney General

*/s/ James A. Barta*
James A. Barta
*Solicitor General*
Office of the Attorney General of
Indiana
IGC South, Fifth Floor
302 W. Washington St.
Indianapolis, Indiana 46204
Telephone: (317) 232-0709
James.Barta@atg.in.gov

*Counsel for Plaintiff State of
Indiana*

RUSSELL COLEMAN
Kentucky Attorney General

*/s/ John H. Heyburn*
John H. Heyburn
*Principal Deputy Solicitor
General*
Office of the Attorney General
700 Capital Avenue, Suite 118
Frankfort, Kentucky 40601
Phone: (502) 696-5300
Jack.Heyburn@ky.gov

*Counsel for Plaintiff
Commonwealth of Kentucky*

ANDREW BAILEY
Missouri Attorney General

*/s/ Joshua Divine*
Joshua Divine
*Solicitor General*
Bryce Beal
*Assistant Attorney General*
Missouri Attorney General's Office
207 West High Street
Jefferson City, MO 65101
(573) 751-6633
Joshua.Divine@ago.mo.gov
Bryce.Beal@ago.mo.gov

*Counsel for Plaintiff State of
Missouri*

MICHAEL T. HILGERS
Nebraska Attorney General

*/s/ Zachary A. Viglianco*
Zachary A. Viglianco
*Deputy Solicitor General*
Office of the Nebraska
Attorney General
2115 State Capitol
Lincoln, NE 68509
(531) 739-7645
zachary.viglianco@nebraska.gov

*Counsel for Plaintiff State of
Nebraska*

35

JOHN M. FORMELLA
New Hampshire Attorney General

*/s/ Brandon F. Chase*
Brandon F. Chase
*Assistant Attorney General*
New Hampshire Department of
Justice
1 Granite Place – South
Concord, NH 03301
(603) 271-3650
brandon.f.chase@doj.nh.gov

*Counsel for Plaintiff State of New
Hampshire*

DREW H. WRIGLEY
North Dakota Attorney General

*/s/ Philip Axt*
Philip Axt
North Dakota Office of the
Attorney General
600 E. Boulevard Ave., Dept. 125
Bismarck, ND 58505
(701) 328-2210
pjaxt@nd.gov

*Counsel for Plaintiff State of
North Dakota*

GENTNER DRUMMOND
Oklahoma Attorney General

*/s/ Garry M. Gaskins, II*
Garry M. Gaskins, II
*Solicitor General*
Office of the Attorney General
State of Oklahoma
313 N.E. 21st Street
Oklahoma City, OK 73105
(405) 521-3921
garry.gaskins@oag.ok.gov

*Counsel for Plaintiff State of
Oklahoma*

ALAN WILSON
South Carolina Attorney General

*/s/ Joseph D. Spate*
Joseph D. Spate
*Assistant Deputy Solicitor
General*
Office of the Attorney General
State of South Carolina
1000 Assembly Street
Columbia, SC 29201
(803) 734-3371
josephspate@scag.gov

*Counsel for Plaintiff State of
South Carolina*

MARTY J. JACKLEY
South Dakota Attorney General

*/s/ Charles D. McGuigan*
Charles D. McGuigan
*Deputy Attorney General*
Office of the Attorney General
1302 E. Hwy. 14, Suite 1
Pierre, SD 57501-8501
Telephone: (605) 773-3215
Fax: (605) 773-4106
charles.mcguigan@state.sd.us

*Counsel for Plaintiff State of South Dakota*

JONATHAN SKRMETTI
Tennessee Attorney General and Reporter

*/s/ Whitney D. Hermandorfer*
Whitney D. Hermandorfer
*Director of Strategic Litigation Unit*
Brian Daniel Mounce
*Counsel for Strategic Litigation & Assistant Solicitor General*
Office of the Tennessee Attorney General
P.O. Box 20207
Nashville, Tennessee 37202
(615) 741-1400
whitney.hermandorfer@ag.tn.gov
brian.mounce@ag.tn.gov

*Counsel for Plaintiff State of Tennessee*

JASON S. MIYARES
Attorney General of Virginia

/s/ *Kevin M. Gallagher*
Kevin M. Gallagher
*Principal Deputy Solicitor General*
Virginia Office of the Attorney
General
202 North 9th Street
Richmond, Virginia 23219
Telephone: (804) 786-2071
Fax: (804) 786-1991
kgallagher@oag.state.va.us
bchestnut@oag.state.va.us
mminot@oag.state.va.us

*Counsel for Plaintiff*
*Commonwealth of Virginia*

PATRICK MORRISEY
West Virginia Attorney General

*/s/ Michael R. Williams*
Michael R. Williams
*Solicitor General*
Office of the Attorney General of
West Virginia
State Capitol Complex
Building 1, Room E-26
Charleston, WV 25301
(304) 558-2021
michael.r.williams@wvago.gov

*Counsel for Plaintiff State of*
*West Virginia*

BRIDGET HILL
Wyoming Attorney General

*/s/ Ryan Schelhaas*
Ryan Schelhaas
*Chief Deputy Attorney General*
Office of the Wyoming Attorney
General
109 State Capitol
Cheyenne, WY 82002
(307) 777-5786
ryan.schelhaas@wyo.gov

*Counsel for Plaintiff State of
Wyoming*

*/s/ Michael D. McCoy*
Michael D. McCoy
William E. Trachman
Mountain States
Legal Foundation
2596 South Lewis Way
Lakewood, Colorado 80227
(303) 292-2021
Mmccoy@mslegal.org

*Counsel for Plaintiffs Allen
Black, Donald Maxey, and
Chisholm Trail Antique Gun
Association*

*/s/ Anna St. John*
Anna St. John
Hamilton Lincoln Law Institute
1629 K St. NW Suite 300
Washington, DC 20006
(917) 327-2392
anna.stjohn@hlli.org

*/s/ M. Frank Bednarz*
M. Frank Bednarz
Hamilton Lincoln Law Institute
1440 W. Taylor St. #1487
Chicago, IL 60607
(801) 706-2690
frank.bednarz@hlli.org

*Counsel for Plaintiff Phillip
Journey*

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B)(i) because it contains 6,191 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and 10th Cir. R. 32(b), as calculated by the word-counting function of Microsoft Word.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5)(A) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface—14-point Century Schoolbook—using Microsoft Word.

**CERTIFICATE OF DIGITAL SUBMISSION**

I hereby certify that a copy of the foregoing brief as submitted in digital form is an exact copy of the written document that will be filed with the Clerk.

**CERTIFICATE OF SERVICE**

I hereby certify that on December 18, 2024, the foregoing brief was electronically filed with the Clerk of the Tenth Circuit Court of Appeals using the CM/ECF system. I certify that the participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system. I also certify that within five business days of issuance of notice that the electronic filing is compliant, seven paper copies will be delivered by Federal Express to the Clerk's Office.

/s/ *Adam T. Steinhilber*
Adam T. Steinhilber

*Counsel for Plaintiff State of Kansas*