No. 24-3101
_____

UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT
_____

STATES OF KANSAS, IOWA, MONTANA, ALABAMA, ALASKA, GEORGIA, IDAHO, INDIANA, KENTUCKY, MISSOURI, NEBRASKA, NEW HAMPSHIRE, NORTH DAKOTA, OKLAHOMA, SOUTH CAROLINA, SOUTH DAKOTA, TENNESSEE, VIRGINIA, WEST VIRGINIA, WYOMING, AND PHILLIP JOURNEY, ALLEN BLACK, DONALD MAXEY, AND CHISHOLM TRAIL GUN ASSOCIATION,

Plaintiffs-Appellants.

v.

MERRICK GARLAND, in his official capacity as Attorney General of the United States, STEVEN DETTELBACH, in his official capacity as the Director of the Bureau of Alcohol, Tobacco, Firearms, & Explosives of the United States Department of Justice, and the BUREAU OF BUREAU OF ALCOHOL, TOBACCO, FIREARMS, & EXPLOSIVES,

Defendant-Appellees.
_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
Case No. 6:24-cv-01086-TC-TJJ
_____

**APPELLANTS' REPLY IN SUPPORT OF INJUNCTION PENDING APPEAL**
_____

**KRIS W. KOBACH**
**ATTORNEY GENERAL OF KANSAS**
Abhishek S. Kambli
Deputy Attorney General
120 SW 10th Avenue, Topeka, KS 66612-1597
(785) 296-6109
Abhishek.Kambli@ag.ks.gov
Counsel for Plaintiff-Appellant State of Kansas

Dated:  August 15, 2024

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... ii

ARGUEMENT .......................................................................................................... 1

    I.    Plaintiffs have standing. ................................................................................. 1

        a.    Individual Plaintiffs have standing. ................................................... 1
        b.    Plaintiff Chisholm Trail has standing ............................................... 3
        c.    Plaintiff States have standing ............................................................ 4

    II.    Plaintiffs are likely to succeed on appeal. ..................................................... 6

        a.    Plaintiffs are likely to succeed on the merits. .................................. 6
        b.    Plaintiffs have shown irreparable harm .......................................... 10
        c.    The balance of interests favors Plaintiffs. ...................................... 10

CONCLUSION ....................................................................................................... 11

CERTIFICATE OF COMPLIANCE ...................................................................... 12

CERTIFICATE OF SERVICE ................................................................................ 13

# TABLE OF AUTHORITIES

## CASES

*Brayman v. KeyPoint Government Solutions, Inc.*, 83 F.4th 823 (10th Cir. 2023) ........... 7

*Chamber of Commerce of U.S. v. Federal Election Commission*, 69 F.3d 600 (D.C. Cir. 1995) 1

*Elwell v. Oklahoma ex rel. Board of Regents of University of Oklahoma*, 693 F.3d 1303 (10th Cir. 2012) ............................................................................................................. 7

*Ezell v. City of Chicago*, 651 F.3d 684 (7th Cir. 2011) ................................................... 9

*Firearms Regulatory Accountability Coalition, Inc., et al. v. Garland, et al.*, No. 23-3230, 2024 WL 3737366 (8th Cir. Aug. 9, 2024) ................................................................. 8

*Free the Nipple-Fort Collins v. City of Fort Collins*, 916 F.3d 792 (10th Cir. 2019) ....... 10

*Friends of the Earth Inc. v. Laidlaw Environmental Services (TOC) Inc.*, 528 U.S 167 (2000) . 3

*Gardner v. Toilet Goods Association*, 387 U.S. 167 (1967) .............................................. 2

*Habecker v. Town of Estes Park*, 518 F.3d 1217 (10th Cir. 2008) ................................... 4

*Harman v. City of Norman*, 981 F.3d 1141 (10th Cir. 2020) ......................................... 6

*Kansas v. Garland*, No. 24-CV-01086-TC-TJJ, 2024 WL 3360533 (D. Kan. July 10, 2024) .................................................................................................................... 1, 2

*Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024) ....................................... 7

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ....................................................... 2

*McRorey v. Garland*, 9 F.4th 831 (5th Cir. 2024) ........................................................... 9

*Mock v. Garland*, 75 F.4th 563 (5th Cir. 2023) ............................................................... 8

*New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1 (2022) ................. 9

*NRA v. Brady*, 914 F.2d 475 (4th Cir. 1990) ................................................................. 6

*Oklahoma v. Biden*, 577 F. Supp. 3d 1245 (W.D. Okla. 2021) .................................. 4, 5

*Organization for Black Struggle v. Ashcroft*, 978 F.3d 603 (8th Cir. 2020) ..................... 6

*Pennsylvania v. Kleppe*, 533 F.2d 668 (D.C.Cir. 1976) ...................................................... 5

*Rapanos v. United States*, 547 U.S. 715 (2006) (opinion of Scalia, J.) .......................... 8

*Summers v. Earth Island Institute*, 555 U.S. 488 (2009) ................................................. 3

*Tennessee v. Department of Education*, 104 F.4th 577 (6th Cir. 2024) ............................ 2

*Texas v. United States*, 809 F.3d 134 (5th Cir. 2015), *as revised* (Nov. 25, 2015) ....... 6

*Thompson v. DeWine*, 976 F.3d 610 (6th Cir. 2020) ....................................................... 6

*Wyoming ex rel. Crank v. United States*, 539 F.3d 1236 (10th Cir. 2008) ...................... 4

*Wyoming v. Oklahoma*, 502 U.S. 437 (1992) .................................................................. 5

*Wyoming v. U.S. Department of the Interior*, 674 F.3d 1220 (10th Cir. 2012) ............... 4

## STATUTES

18 U.S.C. § 926 ................................................................................................................ 7

18 U.S.C. § 921(a)(21)(C) ................................................................................................ 7

# INTRODUCTION

Defendants' Response focuses on standing and little on merits. They make no attempt to counter Plaintiffs' argument that the district court abused its discretion by applying the wrong legal standard and that under the correct standard, Plaintiffs should have been granted an injunction. Regardless, their arguments on standing and the merits fail. The Court should grant Plaintiffs' motion.

# ARGUMENT

## I. Plaintiffs have standing

Plaintiffs have demonstrated standing. The district court's incorrect "heightened standard" for standing was an abuse of discretion on the merits since the court tied likelihood of success on the merits to standing. *Kansas v. Garland*, No. 24-CV-01086-TC-TJJ, 2024 WL 3360533, at *1, 6 (D. Kan. July 10, 2024). But under any standard, all Plaintiffs have standing; Defendants' contrary arguments are meritless.

### a. Individual Plaintiffs have standing

Defendants focus their arguments on whether Individual Plaintiffs are at risk of enforcement action and assert (through selectively parsing their declarations) that they are not. Putting aside the merits of Defendants' assertion, actual enforcement isn't what the law requires for challenging *agency* action. This is because "an agency rule, unlike a statute, is typically reviewable without waiting for enforcement." *Chamber of Com. v. Federal Election Comm'n*, 69 F.3d 600, 604 (D.C. Cir. 1995) (internal citation omitted). When the plaintiff is the object of the agency action "there is ordinarily

1

little question that the action or inaction has caused him injury, and that a judgment preventing or requiring the action will redress it." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561-62 (1992). Therefore, in the APA context, judicial review is the norm when the plaintiff is the object of the regulatory action. The alternative is that anyone seeking to challenge an agency action would be required to demonstrate how their conduct violates the new regulation or wait for enforcement proceedings before seeking judicial review. But regulated parties "need not assume such risks while waiting for an agency to drop the hammer." *Tennessee v. Dep't of Educ.*, 104 F.4th 577, 602 (6th Cir. 2024) (cleaned up).

Defendants do not contest that Individual Plaintiffs are the object of the regulation, which should be treated as a concession. And they don't attempt to argue how this case should go against the general proposition that "there is ordinarily little question that the action or inaction has caused him injury." *Lujan*, 504 U.S. at 561-62. Even the district court didn't apply Defendants' argument against standing for Individual Plaintiffs. Instead, it found that Individual Plaintiffs didn't demonstrate standing because they "remain uncertain whether they will become licensed." *Kansas*, No. 24-CV-01086-TC-TJJ, at *5. But that isn't what the law requires. In *Gardner v. Toilet Goods Ass'n*, 387 U.S. 167, 172–73 (1967), the Supreme Court found standing where the party challenging an action is placed in a "quandary" where they could either test the regulations by waiting for enforcement actions or comply with the regulation and incur the costs associated with compliance.

2

Individual Plaintiffs are in a "quandary" where they (1) could take the risk and see what happens by continuing to sell firearms while unlicensed, (2) get a license to sell firearms, or (3) stop selling firearms altogether. The district court's artificial requirement that they select which harm they will face prior to challenging the Rule has no support. Notably, Defendants don't even attempt to argue the district court's requirement is correct. That is because they cannot. Individual Plaintiffs are the object of the Rule and will undeniably face harm absent judicial intervention.

### b. Plaintiff Chisholm Trail has standing

The Court's standing analysis can end with Individual Plaintiffs, but other Plaintiffs also have standing. Defendants argue that Plaintiff Chisholm Trail lacks standing because the organization cannot establish harm. "An association has standing to bring suit on behalf of its members when its members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Friends of the Earth Inc. v. Laidlaw Env't Servs. (TOC) Inc.*, 528 U.S 167, 181 (2000). To establish standing under this theory, an organization must "make specific allegations establishing that at least one identified member ha[s] suffered or [will] suffer harm." *Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009). Chisholm Trail has established this through Individual Plaintiffs and the declaration of James Fry.

Fry explained that most of the organization's members who buy and sell

3

firearms at its gun shows aren't federal firearms licensees (FFLs). Appx. at 143. The Rule will harm these members because it would require them to become an FFL or stop selling firearms from their personal collections at gun shows. In addition to the harm suffered by their members, Plaintiff Chisholm Trail will also be directly harmed by the Rule. Fry outlined how approximately 70% of Chisholm Trail's annual operating expenses are covered by revenue generated by their biannual gun shows. *Id.* Private party sales of firearms dominate these gun shows, and the Rule admits that it will decrease the numbers of unlicensed firearms "dealers." 89 Fed. Reg. 29,054. This will undoubtedly decrease attendance and revenue for Chisholm Trail.

### c. Plaintiff States have standing

Contrary to Defendants' assertions, Plaintiff States also have standing through (1) loss of tax revenue and (2) administrative costs. "Article III requires 'proof of a substantial likelihood that the defendant's conduct caused plaintiff's injury in fact.'" *Wyoming ex rel. Crank v. United States*, 539 F.3d 1236, 1242 (10th Cir. 2008) (some internal quotation marks omitted) (quoting *Habecker v. Town of Estes Park*, 518 F.3d 1217, 1225 (10th Cir. 2008)). To establish that the States have standing based on lost tax revenue, the "State[s] must show the loss of specific tax revenue." *Oklahoma v. Biden*, 577 F. Supp. 3d 1245, 1253 (W.D. Okla. 2021); *see also Wyoming v. U.S. Dep't of Interior*, 674 F.3d 1220, 1234 (10th Cir. 2012) ("[A] state must show a 'fairly direct link between the state's status as a . . . recipient of revenues and the legislative or administrative action being challenged.'" (alteration in original) (quoting *Pennsylvania v.*

4

*Kleppe*, 533 F.2d 668, 672 (D.C.Cir. 1976))). A direct link exists between Plaintiff States' loss of tax revenue and the Rule.

The States aren't simply speculating that some people might stop selling firearms rather than obtain licenses and that the States might lose some unspecified amount of tax revenue. The States submitted affidavits establishing that individuals are refraining from attending taxable gun shows and making taxable sales. Appx. at 111, 114, 134, 135–38, 140, 141, 143, 144, 146. These declarations show tax revenue loss, including the exact amount of tax revenue the States have lost within a month of the Rule taking effect. *Compare Wyoming v. Oklahoma*, 502 U.S. 437, 445 (1992) ("Unrebutted evidence demonstrates that, since the effective date of the Act, Wyoming has lost severance taxes in the amounts of $535,886 in 1987, $542,352 in 1988, and $87,130 in the first four months of 1989.") *and id.* at 445 n.8 (citing affidavits attesting to lost tax revenue), *with Oklahoma v. Biden*, 577 F. Supp. 3d at 1253 ("Neither the complaint nor the State's papers demonstrate any loss of specific tax revenues, or a loss of future tax revenue, beyond sheer speculation."). Defendants don't explain how this is insufficient to show a concrete injury. Regardless, the States' unrebutted evidence demonstrates they have standing based on lost tax revenue.

Defendants also never deny that Plaintiffs New Hampshire and Tennessee will incur administrative costs as a result of the Rule; rather Defendants assert that the injuries are self-inflicted. But these harms can't be self-inflicted if the only way to avoid them is to change their laws. If they are forced to change their laws as a result

5

of unlawful agency action, they suffer a sovereign harm. *See Texas v. United States*, 809 F.3d 134, 152 (5th Cir. 2015), *as revised* (Nov. 25, 2015); *Thompson v. DeWine*, 976 F.3d 610, 619 (6th Cir. 2020); *Org. for Black Struggle v. Ashcroft*, 978 F.3d 603, 609 (8th Cir. 2020).

## II. Plaintiffs are likely to succeed on appeal.

The district court further abused its discretion by applying a heightened standard to the merits of Plaintiffs' claims. *See* Mot. at 5. Plaintiffs noted that they need only make a "*prima facie* case showing a reasonable probability that [they] will ultimately be entitled to the relief sought," *id.* (internal quotation mark omitted) (quoting *Harman v. City of Norman*, 981 F.3d 1141, 1146 (10th Cir. 2020)); under the correct standard, Plaintiffs have clearly demonstrated that they are entitled to an injunction, *id.* at 7–8. Defendants have no response to this argument. The Court should treat this as a concession. When viewed through the proper legal standard, Plaintiffs have shown they are likely to succeed on appeal.

### a. Plaintiffs are likely to succeed on the merits.

**Authority to define terms.** Defendants rely solely on *NRA v. Brady*, 914 F.2d 475, 479 (4th Cir. 1990) for its proposition that they had authority to promulgate the Rule. But that case relied on *Chevron* deference. *Id.* ("BATF, moreover, is better equipped than the courts for such an endeavor, having the technical expertise essential to determinations of statutory enforcement."). This runs counter to the Supreme Court's holding in *Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244, 2267

6

(2024) which states, "even when an ambiguity happens to implicate a technical matter, it does not follow that Congress has taken the power to authoritatively interpret the statute from the courts and given it to the agency" and that courts are expected "to handle technical statutory questions." What's left is a statute that gives the agency authority to promulgate "only such rules and regulations as are necessary to carry" out other provisions of the statute. *See* 18 U.S.C. § 926. A rule can't be necessary if it rewrites the statute it claims to interpret. This Rule does that in multiple ways like requiring licensing for even those who sell one firearm, despite the statute requiring repetitive sales. *See* 18 U.S.C. § 921(a)(21)(C).

Defendants' other argument "[t]hat ATF is required to define one term does not eliminate the authority ATF otherwise has to issue rules," Resp. at 20, runs counter to the rules of statutory interpretation. "Given how emphatically" Congress directed ATF to define "curios and relics," the Court "must infer" it didn't grant power to define other terms. *Brayman v. KeyPoint Gov't Sols., Inc.*, 83 F.4th 823, 835 (10th Cir. 2023); *Elwell v. Oklahoma ex rel. Bd. of Regents of Univ. of Oklahoma*, 693 F.3d 1303, 1309 (10th Cir. 2012).

***Personal protection exception.*** Defendants point to no authority that allows them to exclude firearms acquired for "personal protection" (which they do not contest includes most firearms) from the "personal collection" safe-harbor provision. When Congress intended to limit ATF's authority by creating the safe harbor, the agency can't impose a rule that effectively erases that safe harbor. After all, the

7

government cannot "rewrite[] the statute," substituting its "purpose" for its plain text. *Rapanos v. United States*, 547 U.S. 715, 755 (2006) (opinion of Scalia, J.). This is especially true where, as here, "[i]t would have been an easy matter for Congress to give the" agency the power it's claiming, but "[i]t did not do that." *Id.*

**Arbitrary and capricious.** As to arbitrary and capacious (and vagueness), Defendants cannot hide behind a "fact-specific inquiry." *See* Resp. at 24. They must provide the public some idea of what behavior requires them to obtain licenses. *See Firearms Regul. Accountability Coal., Inc., et al. v. Garland, et al.*, No. 23-3230, 2024 WL 3737366, at *8 (8th Cir. Aug. 9, 2024) ("The ATF informs us it 'reasonably chose to avoid brightline rules subject to easy circumvention' in favor of an undefined standard." But the Rule "does not explain how providing any amount of mathematical guidance, never mind bright-line mathematical rules, was likely to lead to circumvention of the law. Such guesswork fails to create an identifiable metric that members of the public can use to assess whether their weapon falls within the Rule's definition of a 'rifle.'"); *id.* at *11 ("An agency may promulgate a holistic, multi-factor, weight-of-the-evidence test, but only if that test defines and explains the criteria the agency is applying. . . . the Rule makes it nigh impossible for a regular citizen to determine what constitutes a braced pistol, and whether a specified braced pistol requires NFA registration. For those reasons, the Rule is arbitrary and capricious.)" (cleaned up)); *id.* (rule is arbitrary and capricious when it "allows ATF to reach whatever result it wants." (alteration omitted)); *Mock v. Garland*, 75 F.4th 563, 585 (5th

8

Cir. 2023) (agency's plan to adjudicate cases on a case-by-case basis based on six-part test was arbitrary and capricious). This Rule, rather than clarifying, creates a "holistic, multi-factor, weight-of-the-evidence test" that no one can follow. Defendants cannot do that.

**Second Amendment.** Defendants assert that the Second Amendment doesn't prohibit requiring a license to deal firearms. Resp. at 25. But if an activity is covered by the Second Amendment, they're required to point to a historical analogue demonstrating that the Rule "is consistent with the Nation's historical tradition of firearm regulation." *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 24 (2022). Their argument that *Bruen* did not "disturb the part of *Heller* finding that regulations of commercial firearms sales are presumptively lawful," *id.* (internal cleaned up), misstates the case they cite in support. *McRorey v. Garland* discussed the part of Heller related to bans on possession of firearms by criminals. 99 F.4th 831, 837 n.12 (5th Cir. 2024). It didn't refer to commercial sales nor in any way suggest that the Court would uphold restrictions on commercial sales under the *Bruen* test. *C.f. Ezell v. City of Chi.*, 651 F.3d 684, 701 (7th Cir. 2011) (a pre-*Buren* case discussing that, notwithstanding *Heller*'s footnote, it's the court's job to determine if any given restriction is constitutional). The right to bear arms would be meaningless without the right to acquire arms and the right to sell a firearm is likewise protected. *Id.* at 708 (the right to bear arms includes the right to "maintain proficiency," an "important corollary to the meaningful exercise of the core right to possess firearms for self-

9

defense.").

Finally, Defendants skirt their duty to show a historical analogue. They allude to a "robust historical tradition" of requiring licenses for sales, Resp. at 26, but don't point to any specific laws or traditions, despite having the burden of doing so. This failure demonstrates that the Rule violates the Second Amendment.

### b. Plaintiffs have shown irreparable harm.

Plaintiffs have shown that they're suffering irreparable harm for the same reasons they have standing. The Rule is (1) forcing Individual Plaintiffs into a quandary where they have to change their behavior as a result of the Rule, (2) causing loss of revenue for Plaintiff Chisholm Trail and States, and (3) forcing Plaintiffs New Hampshire and Tennessee to incur administrative costs. Defendants never contest such harms are irreparable if they were to occur.

### c. The balance of interests favors Plaintiffs.

The balance of interests favors Plaintiffs. Plaintiffs have thoroughly demonstrated irreparable harm, and Defendants have no interest in enforcing an unlawful and unconstitutional regulation. And it's "always in the public interest to prevent the violation of a party's constitutional rights." *Free the Nipple-Fort Collins v. City of Fort Collins*, 916 F.3d 792, 807 (10th Cir. 2019). The public has no interest in the government violating the constitutional rights of others. *Id.*

## CONCLUSION

The Court should grant Plaintiffs' motion for an injunction pending appeal.

August 15, 2024                              Respectfully submitted,

                                             s/ Abhishek S. Kambli
                                             Abhishek S. Kambli

## CERTIFICATE OF COMPLIANCE

This motion complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2)(C) because it contains 2,600 words. It also complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 27(d)(1)(E) and 32(a)(5)-(6) because it was prepared using Microsoft Word 2016 in Garamond 14-point font, a proportionally spaced typeface.

s/ Abhishek S. Kambli  
Abhishek S. Kambli

## CERTIFICATE OF SERVICE

I hereby certify that on August 15, 2024, I electronically filed the foregoing motion with the Clerk of the Court for the United States Court of Appeals for the Tenth Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

s/ Abhishek S. Kambli
Abhishek S. Kambli
